UNITED STATES of America,
Plaintiff,

v.

Clark J. UMENTUM et al.,
Defendants.

No. 75–Cr–103.

United States District Court,
E. D. Wisconsin.

Sept. 19, 1975.

William J. Mulligan, U. S. Atty. by Randall J. Sandfort, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

Shellow & Shellow by James M. Shellow, Milwaukee, Wis., for Umentum & Piechota.

Dominic H. Frinzi, Milwaukee, Wis., for Winkka.

Robert J. Lerner of Lerner & Adelman, Milwaukee, Wis., for Mittelstaedt & Gibbons.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The defendants in this action have filed motions to dismiss the first two counts of the indictment, to compel the government to elect between counts and between offenses within counts, to compel disclosure of exculpatory evidence, for a bill of particulars, and to suppress certain physical evidence and statements. An evidentiary hearing was held on September 12, 1975, in connection with the defendants' motions to suppress as evidence certain property seized from an automobile; the latter motions to suppress were denied. The other motions are before me now for decision.

## MOTIONS TO DISMISS COUNTS I AND II

A. Misclassification of cocaine as a narcotic

The defendants Clark J. Umentum, Marilyn Josetta Piechota, John O. Mittelstaedt, and Cheryl Gibbons have moved to dismiss counts I and II of the indictment, in which they are charged with conspiracy to possess with intent to distribute and with distribution of cocaine on the ground that cocaine is misclassified as a narcotic drug.

The premise of the defendants' argument is that as a matter of scientific fact, cocaine (unlike heroin) is not a narcotic drug and that it has no properties or effects which justify classifying it as a narcotic rather than a nonnarcotic stimulant. For the purpose of these defendants' motions to dismiss, this court will assume that as a matter of scientific fact cocaine is not a narcotic drug even though Congress has defined it as such. Accordingly, the request of the defendants Umentum and Piechota for an evidentiary hearing to prove such fact will be denied.

■ Notwithstanding any medical classification of cocaine as nonnarcotic, the federal courts in this district and elsewhere have consistently upheld the *legal* classification of cocaine as a Schedule II narcotic drug controlled substance for the purpose of establishing criminal penalties for its possession or distribution. See my opinion of September 5, 1975, in *United States v. Gill*, 75–CR–113, and cases cited therein. I believe those cases applied the proper standard for review, the "rational basis" test articulated in *United States v. Carolene Products Co.*, 304 U.S. 144, 153–154, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), since neither a fundamental interest nor a suspect classification is involved. Defendants admit that even if cocaine were classified as a nonnarcotic drug, loss of liberty would be possible under 21 U.S.C. § 841(b)(1)(B). Compare *Harper v. Virginia Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), and *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Accordingly, the defendants' motions to dismiss counts I and II because of the misclassification of cocaine will be denied.

B. Failure to list cocaine in Schedule II

The defendants Umentum and Piechota have moved to dismiss counts I and II of the indictment for failure to allege an offense. Each of those counts refers to "cocaine, a Schedule II narcotic drug controlled substance." The defendants argue that cocaine does not appear in 21 U.S.C. § 812(c) Schedule II, which reads in part:

"(a)(4) Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocain or ecgonine."

■■ I take judicial notice that cocaine is a derivative of coca leaves. See *United States v. Amidzich*, 396 F.Supp. 1140 (E.D.Wis.1975), and *United States*

*v. Orzechowski*, 75–CR–83 (E.D.Wis. August 21, 1975). See also *Webster's Third New International Dictionary*, at 434 (G & C Merriam Co. 1966); 4 *Gray's Attorneys' Textbook of Medicine*, Ch. 132, at 132–181 (3d ed. 1974). The court of appeals for the seventh circuit has held that in a similar situation a court should take judicial notice that heroin is a "salt, compound, derivative, or preparation of opium." *United States v. Chiarelli*, 192 F.2d 528 (7th Cir. 1951), cert. denied 342 U.S. 913, 72 S.Ct. 359, 96 L.Ed. 683. Accordingly, the defendants' motion to dismiss counts I and II will be denied.

## MOTIONS TO DISMISS COUNT I

A. Unconstitutionality of 21 U.S.C. § 846.

Defendants Umentum and Piechota have moved for the dismissal of count I of the indictment on the ground that the conspiracy statute, 21 U.S.C. § 846, is unconstitutional for failing to require the allegation or proof of overt acts. The defendants claim that the statute infringes on first amendment rights by imposing criminal sanctions upon thought and speech, upon fifth amendment rights by failing to give proper notice of the charge, and upon eighth amendment rights by creating crimes of status. I believe the defendants' claims must be rejected.

■ Section 846 subjects to punishment "[a]ny person who attempts or conspires to commit any offense defined in this subchapter . . . ." The statute involves no regulation of free expression, but instead prohibits the act of attempting or agreeing to commit one of the substantive offenses defined in the subchapter. Although the act of agreement may have some "pure speech" aspects, the government interest in illegal drug transactions is sufficient to justify such incidental restriction on first amendment rights. *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

■ The defendants argue that an overt act is necessary in order to define or delimit the crime, "so that before the act [is] done either one or all of the parties may abandon their design, and thus avoid the penalty described by the statute." However, the statute requires the act of agreement with intent to agree to commit the substantive offense, and once this agreement has occurred, the crime of conspiracy is complete. The crime defined by the statute does not differ from crimes generally, in that once it is done, it cannot be undone.

■ The defendants also contend that § 846 is unconstitutional for failing to recognize the "free will of the defendants." It is asserted by the defendants in this regard that the statute creates a crime of status. See *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968). This argument has previously been rejected by Judge Reynolds in *United States v. Amidzich*, 396 F. Supp. 1140 (E.D.Wis.1975):

"The 'status' of being coconspirators bears no resemblance to either narcotics addiction, *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), or alcoholism, *Powell v. Texas*, supra."

Accordingly, the defendants' motion to dismiss count I on the ground of the unconstitutionality of 21 U.S.C. § 846 will be denied.

B. No crime of "Unlawful Procurement".

■ The defendants Umentum and Piechota have moved for the dismissal of count I of the indictment on the ground that it fails to allege an offense. Specifically, paragraph 2 of that count alleges that the defendants were to "unlawfully procure and arrange for the unlawful procurement of quantities of cocaine" as part of the conspiracy, and the defendants assert that the procurement of cocaine is not unlawful.

Like Judge Reynolds in *Amidzich*, I find the defendants' contention to be

without merit. The essence of procurement is to obtain possession, and possession of controlled substances is an offense under 21 U.S.C. § 844. The purported distinction between a conspiracy to possess and a conspiracy to obtain possession violates both common sense and the accepted rule that an indictment is to be tested by practical and not technical considerations. *Robbins v. United States,* 476 F.2d 26 (10th Cir. 1973); *United States v. Miller,* 491 F.2d 638 (5th Cir. 1974). In my opinion, the language of paragraph 2 of count I is unobjectionable. Accordingly, the defendants' motion to dismiss count I for referring to "unlawful procurement" will be denied.

C. Failure to allege an overt act.

Defendants Umentum, Piechota, Mittelstaedt, and Gibbons have moved to dismiss count I for failure to allege an offense, on the ground that overt acts are an essential element of a § 846 conspiracy and that no such acts are alleged in Count I of the indictment.

The premise of the defendants' argument, that § 846 requires that an indictment allege more than an agreement to commit certain substantive offenses, is incorrect. *United States v. Deviteri,* 350 F.Supp. 550 (E.D.N.Y.1972); *United States v. Miller,* 387 F.Supp. 1097 (D.Conn.1975). *United States v. Lawson,* 507 F.2d 433 (7th Cir. 1974), cert. denied, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975), is not to the contrary, holding only that it is not error for the government gratuitously to prove that an overt act was in fact committed. Accordingly, the defendants' motions to dismiss count I for failure to allege overt acts will be denied.

### MOTION TO COMPEL ELECTION BETWEEN COUNTS

The defendants Mittelstaedt and Gibbons have moved for an order compelling the government to elect between trying count I or count II of the indictment on the ground that the conspiracy charge of count I and the substantive charge of count II are merged into a single offense.

The defendants acknowledge that unless the congressional intent is otherwise, an indictment can charge a substantive offense and a conspiracy to commit that offense. *Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435; *Pinkerton v. United States,* 328 U. S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489. It is clear that attempts under 21 U.S.C. § 846 are merged into completed offenses under 21 U.S.C. § 841. *Blockburger v. United States,* 284 , U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). However, the rule provided by those cases, that merger does not occur when elements are required for each charge which are not required for the other, leads me to reject the defendants' argument, as applied to conspiracy. An additional element is required for a conviction under § 841 which is not required under § 846—that of actual possession or actual distribution. Similarly, an element is required by § 846 which is not a part of the substantive offense under § 841—that of agreement with coconspirators. Accordingly, the defendants' motion to compel election between counts I and II will be denied.

### MOTION TO DISMISS OR ELECT

The defendants Umentum and Piechota have moved to dismiss count II of the indictment or, in the alternative, for an order requiring the government to elect to pursue one of the two offenses which they contend are charged in count II. That count charges the defendants with possessing with intent to distribute and distributing cocaine, in violation of 21 U.S.C. § 841(a)(1). The defendants contend that possessing with intent to distribute and distributing are

separate and distinct offenses, and that count II is defective for charging both offenses in one count.

Some statutes are directed against certain defined modes for accomplishing a general object and impose criminal penalties upon the doing of any of several specified things, each having reference to that object. Under such statute, the doing of the prohibited thing in each and all of the prohibited modes may be charged in the conjunctive in one count. *Crain v. United States*, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896); *United States v. Amick*, 439 F.2d 351 (7th Cir. 1971). I believe that 21 U.S.C. § 841 is directed generally against the process of distributing controlled substances in this country and that possession with intent to distribute and distribution itself are only different modes of violating the statute's proscriptions. See *United States v. Herbert*, 502 F.2d 890 (10th Cir. 1974). Accordingly, the defendants' motion to dismiss or elect will be denied.

### DISCOVERY MOTIONS

■ The defendants Umentum and Piechota have demanded the disclosure by the government of any exculpatory evidence in its possession. They have also filed a motion for a bill of particulars which seeks information unknown at the time the indictment was returned but which may have been subsequently discovered by the government.

The government has represented that it is adhering to its "open file policy" in this case. Accordingly, the defendants' discovery motions will be denied.

### MOTIONS TO SUPPRESS

■ The defendants Gibbons and Piechota have moved to suppress as evidence property taken from them immediately subsequent to their arrests, and the defendant Piechota has also moved to suppress oral statements made by her in the custody of federal agents subsequent to her arrest. These motions are grounded solely on the contention that their arrests were not attended with probable cause.

The parties have agreed that the motions should be decided on the basis of the facts contained in the complaint which was submitted to the United States magistrate subsequent to the arrests, which facts were all known to the arresting officers at the time of the arrests, supplemented by additional stipulated facts contained in a letter to the court dated August 8, 1975. From the agreed facts, it appears:

1. That on the morning of April 29, 1975, Agent Thomas J. Stacy had three telephone conversations with David Alan Winkka relating to Mr. Winkka's traveling from Green Bay to Milwaukee in order to facilitate the sale of approximately two (2) pounds of cocaine at an agreed price of approximately $52,000.-00. Mr. Stacy was advised by Mr. Winkka that the cocaine would arrive in Mailwaukee from Chicago.

2. That on the afternoon of April 29, 1975, Mr. Stacy again had conversations with Mr. Winkka and that in one of the conversations Mr. Winkka stated to Mr. Stacy that he was waiting at the Milwaukee airport for the people to arrive from Chicago. That in a subsequent conversation, Mr. Winkka advised Mr. Stacy that the people had arrived from Chicago with the cocaine.

3. That subsequent to these conversations, the defendants Marilyn Josetta Piechota and Cheryl Gibbons were observed by Agent Fred Williams in a black over green 1973 Chevrolet Camaro, 1975 Illinois license plate # 650593 and that three other individuals were in that automobile with them and that they were Clark J. Umentum, John Otto Mittelstaedt and David Alan Winkka.

4. That Mr. Williams followed the automobile referred to above to the Boston Store, 331 West Wisconsin Avenue, Milwaukee, at which time Marilyn

Piechota and Cheryl Gibbons were observed to exit the automobile, each carrying a purse.

5. That the automobile in question then proceeded to the Embers Restaurant, 700 East Kilbourn Avenue in Milwaukee at which time Mr. Williams observed Mr. Winkka, Mr. Umentum and Mr. Mittelstaedt enter the restaurant.

6. That thereafter Agents Ripley and Stacy engaged in conversation with Mr. Umentum, Mr. Mittelstaedt and Mr. Winkka relative to the sale of approximately 25 ounces of cocaine at a price of approximately $40,000.00.

7. That Mr. Umentum examined approximately $40,000 and stated that the cocaine was nearby and that it would take him a few minutes to go and get the cocaine. That thereafter Mr. Umentum left the restaurant and was observed by Mr. Williams to reenter the automobile and drive it to the Marc's Big Boy Restaurant, 441 West Wisconsin Avenue, Milwaukee, and that at that time Mr. Umentum met with Marilyn Piechota and Cheryl Gibbons. That Marilyn Piechota and Cheryl Gibbons then entered the automobile with Mr. Umentum and that Mr. Williams next saw the automobile at approximately 5:50 P.M. when it reentered the parking lot of the Embers Restaurant. Further that at approximately the same time, Mr. Williams observed Ms. Gibbons and Ms. Piechota walking slowly across the street from the Embers Restaurant.

8. That during the period that Mr. Umentum was absent from the Embers Restaurant, David Alan Winkka stated to Mr. Ripley that the cocaine was being held by two females who were somewhere in the downtown Milwaukee area and that Mr. Umentum would have to locate the two females in order to obtain the cocaine; further Mr. Winkka stated to Agent Ripley that the two females had accompanied Mr. Umentum and Mr. Mittelstaedt from Chicago.

9. That after Mr. Umentum returned to the Embers Restaurant, he stated to Agents Ripley and Stacy that the cocaine was in the trunk of his automobile; that Mr. Stacy and Mr. Umentum went out to the automobile at which time Mr. Umentum displayed the cocaine in the trunk of the automobile to Mr. Stacy; and that thereafter Mr. Stacy and Mr. Umentum returned to the Embers Restaurant.

10. That after Mr. Stacy and Mr. Umentum re-entered the Embers Restaurant, Ms. Piechota and Ms. Gibbons crossed Kilbourn Avenue, approached the automobile in question at which time Ms. Piechota opened the trunk of the automobile, looked inside the trunk where Mr. Stacy had previously observed the cocaine, and thereafter closed the trunk of the automobile, crossed Kilbourn Avenue, and proceeded to walk slowly along the other side of Kilbourn Avenue.

11. That thereafter the defendants Piechota and Gibbons were arrested on a prearranged signal.

The foregoing was sufficient to establish that there was probable cause to believe that a crime against the United States had been committed and that the defendants Gibbons and Piechota were active and willing participants in that crime. These facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are clearly "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

I find that probable cause for the arrest of these defendants has been demonstrated, and in doing so, agree with the determination of Judge Warren in *United States of America ex rel. Marilyn Josetta Piechota v. Raymond J. Howard*, 75–C–242 (E.D.Wis. April 30, 1975), a proceeding in which the propriety of the defendant Piechota's arrest was the sole issue. Accordingly, the motions to suppress evidence taken from the defendants Gibbons and Piechota will be denied.