**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Clark J. UMENTUM,**
**Defendant-Appellant.**

**No. 76–1210.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1976.
Decided Nov. 24, 1976.

James M. Shellow, Milwaukee, Wis., for defendant-appellant.

William J. Mulligan, U.S. Atty., Randall J. Sandfort, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before HASTING, Senior Circuit Judge, and PELL and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

On June 4, 1975, defendant, together with four others, was charged in Count I of the indictment with conspiracy to possess and distribute cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and § 846, and 18 U.S.C. § 2; and in Count II with possession with intent to distribute and distribution of 878.5 grams of cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Two other counts are not involved in this appeal. Three of the defendants entered pleas of guilty to certain counts, one was found not guilty. The defendant was found guilty of both Counts I and II following trial by jury and sentenced to two concurrent seven year imprisonment terms, followed by a statutory three year special parole period. In *United States v. Umentum*, 401 F.Supp. 746 (E.D.Wis.1975), the pretrial matters in this case are considered.

The transactional evidence is not in dispute. Following two telephone conversations in April, 1975, between a special agent

of the Drug Enforcement Administration with one of defendant's co-conspirators, two special agents not known by the defendant to be special agents, met in person with the defendant and other co-conspirators for the purpose of concluding a sale of 25 ounces of cocaine for $40,625. This meeting terminated with the arrest of the defendant and the seizure by the agents of the plastic bag of white powder which had been represented by the defendant to be cocaine.

The defendant raises six issues on appeal:

(1) Failure of the Government to produce certain internal memoranda of the Drug Enforcement Administration;

(2) Duplicity of the indictment resulting from charges of possession with intent to distribute and distribution;

(3) Duplicitous instructions;

(4) Failure of the court to give an instruction with Count I, the conspiracy allegation, concerning the requirement of a finding of the commission of an overt act;

(5) The giving of a partial instruction on reasonable doubt; and

(6) Other objectionable instruction matters.

## I.

The memoranda which the defendant claims were exculpatory and should have been produced prior to trial were certain internal government memoranda which related generally to the topic of isomers of cocaine and testing procedures which might be used to identify the isomers of cocaine. These memoranda did not directly relate to this case. This material was made available to the defense during trial and admitted as defense exhibits 8, 9, and 9A. These documents which were desired by the defense for cross-examination purposes were used for that purpose. The trial court granted defendant's motion for a continuance after the trial had begun due to some additional tests run by the Government witness shortly before trial. During this time the defendant came into possession of the Government's memoranda and was permitted to reopen cross-examination of the Government witness to make use of the memoranda.

We do not believe that these internal memoranda were required to be produced pursuant to Fed.R.Crim.P. 16 or Brady[1] as recently interpreted in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). We consider the memoranda neither exculpatory nor material to the defendant's defense. This same issue is discussed more fully in United States v. Orzechowski, 547 F.2d 978, an opinion issued simultaneously with this opinion. In addition, in the present case the defendant had the use of these memoranda during trial. As the trial judge stated, to hold otherwise "would mean that the government would be obliged to turn over every single piece of internal study, research, communication, and point of view that the laboratories of the D.E.A. may have utilized on any phase of the world of cocaine."

## II. and III.

The issue of the duplicity in Count II charging possession with intent to distribute and distribution has likewise been resolved adversely to defendant in Orzechowski, supra, and merits no further discussion here. The issue of the instructions being likewise duplicitous is similarly resolved in Orzechowski, supra.

## IV.

Count I of the indictment charging conspiracy alleges no overt act in furtherance of the conspiracy, nor was the jury instructed as to any requirement that such an overt act need be found from the evidence before a guilty verdict could be reached.

First, it is to be noted that neither § 846 of Title 21 nor its predecessor § 174, in contrast to the general conspiracy statute, 18 U.S.C. § 371, has in its language any requirement concerning an overt act.

---

1. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

In the lower court defendant claimed that it was necessary for the Government to charge an overt act in the indictment. He does not pursue that here, taking notice of numerous cases contrary to that claim, including *United States v. King*, 521 F.2d 61 (10th Cir. 1975), which, however, defendant relies on to require an overt act instruction. *See also United States v. Garfoli*, 324 F.2d 909 (7th Cir. 1963); *United States v. DeJesus*, 520 F.2d 298 (1st Cir. 1975), *cert. denied*, 423 U.S. 865, 96 S.Ct. 126, 46 L.Ed.2d 94. Nor is the issue on appeal the absence of proof of acts which might have been labeled overt acts since they are obvious in the record as the defendant candidly concedes in footnote 8 in his brief, page 18.

The issue remaining is should the jury have been instructed nevertheless that there was an overt act proof requirement upon the Government? The defendant relies upon *United States v. King, supra.* That court held that such an instruction was necessary in a § 846 conspiracy charge regardless of the absence in the statute of an overt act requirement, and regardless of the strength of the evidence. Other cases cited by defendant, such as *United States v. Hutchinson*, 488 F.2d 484 (8th Cir. 1973), *cert. denied*, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974), seem to assume that an overt act is a requirement of § 846 without the issue being directly raised. *Hutchinson* cites for its assumption cases involving a § 371, Title 18, charge, or a charge under its predecessor, which by their language required an overt act.[2]

Defendant further relies on other cases, such as *United States v. Robinson*, 503 F.2d 208 (7th Cir. 1974), *cert. denied*, 420 U.S. 949, 95 S.Ct. 1333, 43 L.Ed.2d 427 (1975), a prosecution under 18 U.S.C. § 241, which likewise contains no overt act requirement. In that case there was proof of overt acts. The opinion does not reveal whether or not overt acts were also alleged. The issue we have here was not raised. However, in *United States v. Morado*, 454 F.2d 167 (5th Cir. 1972), *cert. denied*, 406 U.S. 917, 92

S.Ct. 1767, 32 L.Ed.2d 116 it was held that § 241 does not require that any overt act be shown.

Defendant also cites other cases, such as *United States v. Floyd*, 496 F.2d 982 (2d Cir. 1974), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664, a § 846 prosecution, in which it appears that overt acts were charged in the indictment. Therefore the particular issue we have was not raised.

We do not believe that these cases are controlling. The matter has been previously touched on in this circuit. In *United States v. Cortwright*, 528 F.2d 168 (7th Cir. 1975), a § 846 conspiracy prosecution in which overt acts were alleged, the court was concerned with the sufficiency of the evidence. The court, however, explains that all that is required in a § 846 prosecution is an agreement between two or more persons to commit any offense under the Controlled Substances Act, and at 528 F.2d 172 n.1 elaborates:

This circuit has not required allegation or proof of an overt act in furtherance of a drug conspiracy. *United States v. Garfoli*, 324 F.2d 909 (7th Cir. 1963).

In *Garfoli, supra*, Judge Duffy, writing for the panel, stresses that § 174, now repealed but similar to the present § 846, contains no requirement that an overt act be alleged or proved in contrast to a § 371 conspiracy prosecution. The court held that the act of conspiracy was by itself sufficient, citing *Nash v. United States*, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913).

In *Nash*, a Sherman Act prosecution, the Court considered a situation where no overt act was alleged. It held that the Act punished conspiracies on a common law footing in that the Act did not contain a requirement for the doing of any other act beyond conspiring. The Court distinguished other statutes which contain the added requirement and declined to read into the Sherman Act more than it found there.

In the later case of *Singer v. United States*, 323 U.S. 338, 65 S.Ct. 282, 89 L.Ed.

---

**2.** *United States v. Skillman*, 442 F.2d 542 (8th Cir. 1971), *cert. denied*, 404 U.S. 833, 92 S.Ct.

82, 30 L.Ed.2d 63; *United States v. Falcone*, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940).

285 (1945), a Selective Training & Service Act conspiracy prosecution, the Court recognized that that Act also did not require an overt act for the offense of conspiracy but punished conspiracy "on the common law footing."

Cases other than *Cortwright, supra,* in other jurisdictions, have also recognized the precedent of older cases holding that no overt act was required under the prior act. These cases aid in the determination of whether an overt act is required under § 846. Nothing in the congressional history of § 846 weakens the force of the earlier interpretations. *United States v. DeJesus, supra; United States v. DeViteri,* 350 F.Supp. 550 (E.D.N.Y.1972); *United States v. Miller,* 387 F.Supp. 1097 (D.Conn.1975).

We see no justification for departing from the reasoning of these latter cases and this circuit's *Cortwright* and *Garfoli* decisions, *supra.*

At common law conspiracy did not require an overt act. The Supreme Court has recognized the power of Congress to create a common law type conspiracy for specific purposes. Section 846 requires no overt act as distinguished from § 371, so we decline to read such a requirement into § 846.

An overt act, therefore, need not be charged in a § 846 conspiracy. If an overt act need not be charged, it need not be proved. If an overt act need be neither charged nor proved, there remains nothing about which to instruct on that issue.

In addition, in this case the court and counsel discussed at length this aspect of the conspiracy instructions. It is not easy to follow and understand that discussion by reading the record, but the trial court determined that the defendant preferred that the overt act requirement instruction not be used. The defendant disputes that that was what was intended. We need not resolve that aspect of the controversy.

### V.

The next issue involves the instruction on reasonable doubt. On the matter of reasonable doubt the only instruction given to the jury was:

It is not required that the Government prove guilt beyond all possible doubt. The test is one of reasonable doubt.

The defendant interprets this as not defining what reasonable doubt is, but what it is not.

The court apparently was relying on this court's opinion in *United States v. Shaffner,* 524 F.2d 1021 (7th Cir. 1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976). The balance of the instruction given made it quite clear that to overcome the presumption of innocence the burden was on the Government to prove guilt beyond a reasonable doubt. To justify a guilty verdict the jury was instructed that it would have to be satisfied of the defendant's guilt beyond a reasonable doubt after careful and impartial consideration of all the evidence, rejecting suspicion or conjecture.

We do not approve of the abbreviated form used in this case, but it is less objectionable than the instruction used in *Shaffner, supra,* which was likewise not approved but which did not require reversal. In *Shaffner, supra,* the instruction elaborated on what was given here by adding, among other things, that "If that were the rule, few men, however guilty they might be, would be convicted." That language, missing in the present instruction, more nearly parallels in meaning the language found objectionable in *United States v. Bridges,* 499 F.2d 179 (7th Cir. 1974), *cert. denied,* 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 284. The instruction in that case stated that "reasonable doubt" was not for the purpose of "permitting guilty men to escape." What was given in the present case merely limited to some extent the outer extremities of proof beyond a reasonable doubt. In no event can reasonable doubt be equated with requiring proof beyond "all possible doubt." This instruction, excluding the necessity of Government proof beyond "all possible doubt," is not as objectionable as equating reasonable doubt with substantial doubt. *See United States v. Wright,* 542 F.2d 975 (7th Cir. 1976).

Reasonable doubt was not slighted in final arguments. The defense argued in part:

So, the question is:. What is a reasonable doubt? It's a difficult thing to define. The Court won't define it for you. You have to think it through and think what the words mean. It means certainly not frivolous. It means certainly not emotional. It means the same thing the words mean; a reasonable doubt is a doubt that's founded in reason; it's a doubt for which you can give a reason. Are there doubts for which you can give reasons in this case? Certainly. Let's look at some of them, and we are going to go over them very quickly at this time because we will come back to each of them.

In the circumstances of this case, considering the instructions as a whole, we do not believe the instruction given requires reversal.

## VI.

Other objections of the defendant are to instructions given or not given.

■ First, the defendant objects to the failure of the court to give an instruction defining that portion of the language of 21 U.S.C. § 812(c), Schedule II(a)(4), "chemically equivalent or identical." That issue was adversely resolved to defendant in *United State v. Orzechowski, supra,* decided this date and requires no further discussion.

■ Next, the defendant objects to so much of the court's instructions as stated that "l-cocaine is clearly covered by the statute." Even though this factual proposition was not controverted at trial or on appeal, the defendant objected in the absence of an instruction to the effect that the other isomers of cocaine were not controlled. For the court in its instructions to assume the existence of a fact which is

undisputed or proved beyond controversy is not reversible error. *United States v. Jonikas,* 197 F.2d 675 (7th Cir. 1952).

In the instruction conference the trial judge clearly stated his position on the issue with which we find no fault:

Court: Well, I have held that cocaine is a controlled substance in the pretrial motions of this case, and believe that the proper way to present this case to the jury is very much in the manner that Judge Warren did, as reflected in Instruction 61A.

I think the defendant is entitled to argue to the jury that the Government's testing is insufficient to establish that the substance in question fitted the 21 U.S. Code, 812 Schedule II(a)(4) definition, and I think the Court should instruct the jury that l-cocaine is within the Schedule and that it is for them to determine whether the evidence persuades the jury whether the Government has shown beyond a reasonable doubt that in light of the language of II(a)(4) the substance tested was a controlled substance.

It seems to me that's consistent with the way the case was presented to the jury. I think it enables the Government to have the benefit of the Court's previous conclusion that cocaine is a controlled substance and still admits to the defense their theory that certain isomers are not, and if you think the Government has failed to prove it was not one of the isomers, you can argue that the Government has failed to prove it was not one of the isomers which is fairly to be interpreted within Subsection 4.

When so much of the instruction as defendant objected to is considered in the text of the balance of the instruction it can be seen that the law as applied to this case was fairly stated.[3] Adequate allowance was also made for the defendant's theory of the

---

3. The court instructed in part:

In considering whether the Government has met its burden of proof as to the identity of the substance allegedly sold by the defendants, you may consider approaching the problem in the following fashion:

At the outset, you have already been instructed that the defendant in a criminal case has no burden. The burden never shifts from the Government to establish its case beyond a reasonable doubt. You may draw no inference whatsoever from the failure of the de-

case which was that only l-cocaine was controlled and that the other seven isomers, nc⁺ being derived from coca leaves nor chemically equivalent or identical, were not controlled. The Government's test evidence was required to demonstrate, according to the defendant, that the powder was l-cocaine.

The jury was not instructed that the transactional powder was l-cocaine. The instructions left to the jury the question of whether the transactional powder was or was not l-cocaine, or whether it was in the language of the statute some other substance chemically equivalent or identical thereto.

■ The defendant further argues that the instructions permitted a non-unanimous verdict of guilty since part of the jury might have believed that the proof showed this powder to be l-cocaine and the balance of the jury might have found it to be some substance chemically equivalent or identical to l-cocaine. The indictment charged that the powder involved was a controlled substance, and considering the evidence under the instructions the jury found that it was, and consequently rendered a verdict of guilty. That was all that was required. If it had been considered that it was important to know how the jury arrived at its verdict, what its thinking or conclusion was about the particular identity of the controlled substance, a special verdict could have been requested by the defendant. Though we may seriously question the general use of special verdicts in the federal

fendant's chemist to test the substance in question.

You may first consider whether the Government has proven beyond a reasonable doubt that the substance tested was coca leaves, or any salt, compound, derivative, or preparation of coca leaves, or any salt, compound, derivative or preparation thereof which is chemically equivalent or identical to any of these substances.

The testimony in the case has revealed that cocaine is an alkaloid with a variety of isomers. It is not disputed that the only isomer which is naturally derived from the coca plant is l-cocaine. L-cocaine can be synthetically constructed from non-coca leaf origins. L-cocaine is clearly covered by the statute. Therefore, you may first consider whether or not the substance tested was l-cocaine. If you find beyond a reasonable doubt that the substance tested was l-cocaine, then you have found that this substance is a Schedule II controlled substance.

In arriving at this decision, you may consider whether or not, or to what degree, the tests performed by the Government chemist were specified for l-cocaine.

If you find that the substance tested was something other than l-cocaine then, having heard the testimony of the expert witnesses with regard to the degree of specificity and certainty associated with the various tests, you must determine whether or not the substance tested was "chemically equivalent or identical" with coca leaves, or any salt, compound, derivative, or preparation of coca leaves. If you find beyond a reasonable doubt that the substance tested was "chemically equivalent or identical" then you have found that this substance is a Schedule II Controlled Substance.

One of the elements of the offense charged in Count II is that the substance tested by the Government chemist is cocaine as cocaine is defined in the Controlled Substances Act— Controlled Substances Act, Title 21, Section 841(a)(1), Schedule II(a)(4).

I have previously read to you the language of that statute. That statute, and that statute only, covers those forms of cocaine which are derivatives of coca leaves or which are chemically equivalent or identical to such derivatives. The defendants cannot be convicted of Count II unless the Government has proved beyond a reasonable doubt that the substance tested by the Government chemist is a form of cocaine that is either a derivative of coca leaves or a substance chemically equivalent or identical to such a derivative.

There are only two ways in which the Government could meet its burden of proving that the substance tested by its chemist falls within the statute.

The first is to prove beyond a reasonable doubt that the substance is a derivative of coca leaves. The second is to prove beyond a reasonable doubt that the substance is chemically equivalent or identical to a derivative of coca leaves. You may not speculate as to the identity of the substance. If you have a reasonable doubt that the substance tested by the Government chemist is a form of cocaine covered by the statute, you must find the defendants not guilty of Count II. Similarly, if all that the Government has proved is that the substance is cocaine without proving that it is either a derivative of coca leaves or a substance chemically equivalent or identical to such derivatives, then the Government has not proven its case as to Count II.

courts, we note no such request in the record.

As a whole we find no reversible error in the instructions given nor in the other issues raised in this appeal, and therefore we affirm.

AFFIRMED.