[No. 6731-1.   Division One.   September 17, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. CYNTHIA LOUISE STITT, *Appellant*.

*Peter Berzins,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Steve Miller, Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

The defendant appeals from a conviction of violating the Uniform Controlled Substances Act, specifically from the offense of possession with intent to manufacture or deliver a controlled substance and/or narcotic drug, to wit: cocaine.

Armed with a search warrant, police officers entered the defendant's Lake Forest Park residence. The defendant was observed leaving the bathroom and immediately thereafter a plastic bag containing cocaine was retrieved from the toilet bowl. The ensuing search of the premises revealed approximately 100 grams of powder containing cocaine.

This appeal presents one principal issue.

## ISSUE

Did the state legislature err in classifying cocaine as a narcotic drug under this state's Uniform Controlled Substances Act?

## DECISION

CONCLUSION. We hold that the legislature did not commit legal error in classifying cocaine as a narcotic drug and that the defendant was not denied her constitutional right to equal protection of the laws by virtue of such classification.

Under Washington's Uniform Controlled Substances Act, cocaine is defined as a narcotic drug, RCW 69.50.101(o)(4),

and as a Schedule II controlled substance, RCW 69.50-.206(b)(4). As such, anyone who manufactures or delivers it, or who possesses it with the intent to manufacture or deliver, is subject to being imprisoned for not more than 10 years, or fined not more than $25,000, or both. RCW 69.50-.401(a)(1)(i).

The defendant contends that because cocaine is not a narcotic drug in the pharmacological sense of the term, it was improper for the legislature to so define it for regulatory and penalty purposes.[1] We disagree.

█ The legislature is not required to follow the pharmacological definition of a drug in defining it for purposes of legislation and, in fact, one of the primary purposes of any legislative definition is to specifically indicate what it is that the legislature intends to prohibit. *State v. Erickson,* 574 P.2d 1, 15 (Alaska 1978). *See also* Annot., 50 A.L.R.3d 1164, 1170–71 (1973). To the extent that *State v. Zornes,* 78 Wn.2d 9, 475 P.2d 109 (1970), cited by defendant in her brief herein may suggest that the legislature should follow pharmacological definitions, it is obiter dictum.[2]

██ In contending that this legislation violates the defendant's equal protection rights, as she does, the defendant undertakes a heavy burden of persuasion. She must overcome the presumption of constitutionality beyond a reasonable doubt; and when a statutory classification is challenged, as it is here, it is presumed that facts sufficient to justify the classification exist. *Brewer v. Copeland,* 86

---

[1] "[A] narcotic drug is one which induces deep sleep and makes an individual insensitive to pain." *State v. Zornes,* 78 Wn.2d 9, 16, 475 P.2d 109 (1970).

[2] In 1969, cannabis, or marijuana, was expressly removed from the Narcotic Drug Act and placed in the Dangerous Drug Act by the legislature. In setting aside a conviction of unlawful possession of narcotic drugs based on the possession of marijuana under the old act, the State Supreme Court did so on the basis of statutory construction, holding as follows:

We hold, therefore, that Laws of 1969, 1st Ex. Ses., ch. 256, §§ 7, 9, 10, 11, taking marijuana out of the Uniform Narcotic Drug Act, expresses the intention that its provisions shall apply to pending actions. The charge of unlawful possession of narcotic drugs cannot stand.

*State v. Zornes,* 78 Wn.2d 9, 26, 475 P.2d 109 (1970).

Wn.2d 58, 61, 542 P.2d 445 (1975); *State v. Kent,* 87 Wn.2d 103, 109–10, 549 P.2d 721 (1976).

The affidavit of Dr. Floyd E. Anderson, Chief of Chemical–Biological Coordination, Drug Enforcement Administration, Department of Justice, Washington, D.C., was filed herein. In it, Dr. Anderson notes that each year numerous deaths and injuries result from the use of cocaine. His affidavit also traces the history of the association of cocaine with opiates as narcotic drugs for regulatory and penalty purposes and states in pertinent part:

Some of the factors that have led to their legal association are the following:

1. Both are natural products derived from plants not grown in this country.

2. They are both smuggled into this country, often by the same illicit methods.

3. Major criminal syndicates smuggle both drugs, heroin and cocaine, into this country—often simultaneously. Such syndicates and associated traffickers look for small bulk, high profit items for smuggling. The enormous profits derivable from heroin and cocaine make them especially attractive to all elements in the distribution chain. Intelligence records document that large and impressive seizures, involving sophisticated equipment such as multi–engine aircraft, radio communication elements and boats, have been undertaken by identified criminal syndicates; such seizures are often both cocaine and heroin.

Recent data on the Mexican route has revealed that of 61 major violators, 47 have dealt with both heroin and cocaine.

One notes parenthetically that intelligence reports disclose that smuggling groups commonly are engaged in other criminal activity involving other drugs, alien smuggling, gun smuggling, document forging, and money counterfeiting. These activities frequently result in violence and murder.

4. Drug abusers employ narcotics and cocaine together. Compositions containing heroin and cocaine are available on the street for "mainlining" (intravenous administration). They are sometimes known as "bombita" or "speedballs."

■ Because there is a rational relationship between the statutory classification of cocaine as a narcotic drug and the regulation and control of cocaine traffic in this state, the defendant has not sustained her burden. *United States v. Hobbs,* 392 F. Supp. 444, 446–47 (D. Mass. 1975). *See Houser v. State,* 85 Wn.2d 803, 807–09, 540 P.2d 412 (1975).

In a recent decision, the Supreme Court of Alaska made an extensive review of the federal and state cases on this subject. We agree with the conclusion of that court:

> Attacks on legislative classification of cocaine as a narcotic have uniformly been rejected by the federal courts, and no reported state cases invalidating laws because of such classification have been called to our attention.
>
> We conclude that there is ample, respectable scientific evidence of harm or potential harm from the use of cocaine to sustain the legislature's inclusion of cocaine in its classification of narcotics under the provisions of [the Alaska statute]. Thus, the legislative goal is legitimate, and the classification at issue is substantially related to that goal.

(Footnotes omitted.) *State v. Erickson, supra* at 17–18.

■ The defendant's remaining contention that when the police entered the defendant's home with the search warrant, they failed to comply with the requirements of the "knock and announce" statute, RCW 10.31.040, is not well taken. Whether or not that rule was complied with presents a factual issue in this case. *See State v. Harris,* 12 Wn. App. 481, 530 P.2d 646 (1975); 70 A.L.R.3d 217 (1976). Based on disputed testimony, the trial court found that the rule had, in fact, been followed. We will not interfere with that determination. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Affirmed.

SWANSON, A.C.J., and JAMES, J., concur.

Reconsideration denied October 18, 1979.

Review denied by Supreme Court January 18, 1980.