**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gary KAINZ, Defendant and Appellant.**

**Cr. No. 822.**

Supreme Court of North Dakota.

July 1, 1982.

Owen K. Mehrer, State's Atty., Dickinson, for plaintiff and appellee.

Freed, Dynes, Reichert & Buresh, Dickinson, for defendant and appellant; argued by Ronald A. Reichert, Dickinson.

SAND, Justice.

The defendant, Gary Kainz, was found guilty by the court of having delivered a controlled substance, cocaine, in violation of North Dakota Century Code § 19–03.1–23(1)(a) and was sentenced to five years in the North Dakota State Penitentiary. A judgment of conviction was issued and entered from which the defendant appealed.

Various motions and proceedings took place before the trial court, culminating in the case being heard by the court on the following stipulation of facts:[1]

"An agent of the Drug Enforcement Unit, more specifically Dale Maixner, had in September of 1980 purchased cocaine from Brian Scott.

"Agent Maixner stayed in contact with Brian Scott in attempting to set up a larger purchase.

"Scott attempted to get Gary Kainz to sell Dale Maixner a quantity of cocaine, and succeeded.

"The sale was to take place sometime on the evening of February 27, 1981. On that evening, Gary Kainz contacted Scott, who was in contact with Agent Maixner, Kainz said he had access to approximately eight ounces of cocaine. Gary Kainz then met with Scott and Maixner at the Holiday Inn in Dickinson. The three men went out to an automobile used by Maixner, and the delivery of the cocaine from Kainz to Agent Maixner took place.

"The Amended Complaint states as follows:

" 'That on or about the 27th day of February, 1981, at Dickinson in Stark County, North Dakota, the said Defendant Gary Kainz, did deliver to an agent of the North Dakota Drug Enforcement Unit at a parking area adjacent to the Holiday Inn in Dickinson, North Dakota, approximately eight (8) oz. (226.80 grams) of a controlled substance known as cocaine in violation of Section 19–03.1–23(1)(a) of the North Dakota Century Code as constitutes a Class A Felony.'

"Gary Kainz admits his guilt to the allegations in the Amended Complaint. The parties hereto will stipulate that cocaine is pharmacologically classified as a stimulant, not a narcotic, and that the classification of cocaine as a narcotic is a legislative and legal classification, not a scientific one."

On appeal, the defendant raised the following issues:

(1) Does NDCC § 19–03.1–23(1) create a strict liability felony?

(2) If it does, is it in violation of constitutional standards of due process guaranteed to the states by Amendments V, VIII and XIV to the United States Constitution and Article I, §§ XI, and XII of the North Dakota Constitution?

(3) May the Legislature constitutionally classify cocaine as a narcotic, NDCC § 19–03.1–01(15)(d) and place it in Schedule II, § 19–03.1–07(2)(d), a schedule of controlled substances?

(4) Did the State prove the elements of the offense charged?

During oral argument the parties conceded that the first two issues were resolved by *State v. McDowell*, 312 N.W.2d 301, (N.D. 1981) and *State v. Rippley*, 319 N.W.2d 129 (N.D.1982), wherein we held that the Legislature has the authority constitutionally to forbid the doing of an act and to make the violation thereof a matter of strict criminal liability without regard to the intent or knowledge of the doer and that due process

---

1. Kainz also presented the testimony of Dr. Ronald Siegel, an expert on the pharmacological aspects of cocaine.

is not violated by excluding criminal intent (culpability) as an element of the crime. The *Rippley* case also noted that the Legislature, in Ch. 106 S.L. 1975, deliberately removed the phrase "knowingly or intentionally" from § 19–03.1–23(3), which is a clear indication that the Legislature intended to eliminate from the statute in question a culpability requirement.

With respect to the third issue, Kainz asserts that the classification of cocaine as a narcotic drug is unconstitutional because: (1) the classification of cocaine as a narcotic drug is pharmacologically wrong; (2) the classification of cocaine as a schedule II drug is wrong; and (3) the legislature had no basis for making these classifications. Kainz contended that the unrebutted testimony of Dr. Ronald Siegel, an expert on the pharmacological aspects of cocaine, established that cocaine is not a narcotic drug but is a stimulant [2] and that the legislative classification of cocaine as a narcotic and schedule II drug (NDCC §§ 19–03.1–07, 19–03.1–01(15), 19–03.1–23) is not pharmacologically supported and is without reasonable foundation and should be declared unconstitutional. Kainz further contended that the inclusion of cocaine as a "narcotic drug" was done without supporting evidence and subjects him to the difference between a ten-year sentence for a class B felony, under schedule III (NDCC § 19–03.1–09) and a twenty-year sentence for a class A felony, as a narcotic under schedule II (NDCC § 19–03.1–07). See NDCC §§ 19–03.1–23; 12.1–32–01.

▪ In conjunction with these assertions, we note that under the North Dakota Constitution the Legislature has plenary authority except as limited by the North Dakota Constitution and the Constitution of the United States and appropriate Congressional acts. The North Dakota Constitution is an instrument of limitations rather than an instrument of grants such as the United States Constitution. *State ex rel. Agnew v. Schneider,* 253 N.W.2d 184 (N.D.1977).

▪ In addition, in *State v. Knoefler,* 279 N.W.2d 658, 662–63 (N.D.1979), we said:

"It is now settled that states have power to legislate against what are found to be injurious practices in their internal commercial and business affairs as long as their laws do not run afoul of some specific federal constitutional prohibition or some valid federal law. In determining the constitutionality of statutes regulating commercial affairs under the Equal Protection Clause, courts have required only a rational relationship between the classification and the purpose of the statute. Our court has followed this approach in reviewing equal protection challenges to such statutes. In *State v. Hanson,* 256 N.W.2d 364 (N.D.1977), we quoted approvingly from *In re Estate of Jensen,* 162 N.W.2d 861, 863 (N.D.1968):

'Sections 11 and 20 of the North Dakota Constitution and § 1 of the fourteenth amendment to the United States Constitution do not prohibit or prevent classification, provided such classification is reasonable for the purpose of legislation, is based on proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or to burden another or to oppress unlawfully in its administration.'

The court in *Hanson* continued by saying:

'Equal protection requires a rational relationship between the classification and the purpose of the statute. If the classification is arbitrary, unreasonable, or unwarranted, it may offend constitutional standards.' 256 N.W.2d at 368. This case also stands for the proposition that the burden is on the challenger to prove that the statute is clearly unreasonable. *State v. Hanson, supra* at 366.

"In reviewing the relationship between the commercial classification and the purpose of the statute, it is not necessary

---

2.  Dr. Siegel testified that cocaine is a stimulant as defined in subsection 2 of schedule III

(NDCC § 19–03.1–09).

that the purpose of the statute be readily ascertainable upon its face. In *United States v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), the United States Supreme Court in April of 1938 had under consideration the constitutionality of the Filled Milk Act of Congress. The court, through Justice Stone, said:

'Even in the absence of such aids [legislative findings], the existence of fact supporting the legislative judgment is to be presumed, for regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators.' [Footnote omitted.] 304 U.S. at 152, 58 S.Ct. at 783.

Later in the same opinion he said:

'... the constitutionality of a statute, valid on its face, may be assailed by proof of facts tending to show that the statute as applied to a particular article is without support in reason because the article, although within the prohibited class, is so different from others of the class as to be without the reason for the prohibition ... by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed afford support for it.' "

These statements and rationale apply to the instant case.

Furthermore, we significantly note that the Legislature in NDCC § 19–03.1–02, authorizing the North Dakota State Laboratories Department to add or delete substances or reschedule all substances enumerated in certain sections, set out the following standards and guidelines to be followed:

"a. The actual or relative potential for abuse;

b. The scientific evidence of its pharmacological effect, if known;

c. The state of current scientific knowledge regarding the substance;

d. The history and current pattern of abuse;

e. The scope, duration, and significance of abuse;

f. The risk to the public health;

g. The potential of the substance to produce psychic or physiological dependence liability; and

h. Whether the substance is an immediate precursor of a substance already controlled under this chapter.

"2. After considering the factors enumerated in subsection 1, the department shall make findings with respect thereto and issue a rule controlling the substance if it finds the substance has a potential for abuse.

"3. If the department designates a substance as an immediate precursor, substances which are precursors of the controlled precursor shall not be subject to control solely because they are precursors of the controlled precursor.

"4. If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the department, the department shall similarly control the substance under this chapter after the expiration of thirty days from publication in the federal register of a final order designating a substance as a controlled substance or rescheduling, or deleting a substance, unless within that thirty-day period, the department objects to inclusion, rescheduling, or deletion. In that case, the department shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the department shall publish its decision, which shall be final unless altered by statute. Upon publication of objection to inclusion, rescheduling, or deletion under this chapter by the department, control under this chapter is stayed until the department publishes its decision.

Keeping in mind the principles of law expressed in *Knoefler, supra,* and *United States v. Carolene Products Co., supra,* and in the absence of any facts to the contrary, we are persuaded to assume that the Legislature, in classifying or reclassifying controlled substances as schedule II substances and narcotic drugs followed the same standards and guidelines it imposed upon the State Laboratories Department.

We also take notice that the Illinois Supreme Court,[3] in *People v. McCarty,* 86 Ill.2d 247, 56 Ill.Dec. 67, 427 N.E.2d 147 (1981), concluded that a rational basis existed to validate the Legislature's judgment to classify cocaine as a schedule II "narcotic drug" and thus such classification did not deny the defendant his constitutional right to equal protection under the law. In reaching this conclusion, the Illinois Supreme Court set out a sizable number of final decisions of state appellate courts and federal courts, all of which upheld the classification of cocaine as a narcotic for penalty purposes. They are:

"*State v. Bonanno* (La.1980), 384 So.2d 355; *People v. Davis* (1979), 92 Cal. App.3d 250, 154 Cal.Rptr. 817; *State v. Stitt* (1979), 24 Wash.App. 260, 600 P.2d 671; *State v. Vernon* (Minn.1979), 283 N.W.2d 516; *State v. Erickson* (Alaska 1978), 574 P.2d 1; *People v. Billi* (Sup.Ct. 1977), 90 Misc.2d 568, 395 N.Y.S.2d 353; *Canal Zone v. Davis* (5th Cir. 1979), 592 F.2d 887; *United States v. Stieren* (8th Cir. 1979), 608 F.2d 1135; *United States v. Vila* (2d Cir. 1979), 599 F.2d 21, *cert. denied* (1979), 444 U.S. 837, 100 S.Ct. 73,

62 L.Ed.2d 48; *United States v. Solow* (5th Cir. 1978), 574 F.2d 1318; *United States v. Lane* (10th Cir. 1978), 574 F.2d 1019; *United States v. Wheaton* (1st Cir. 1977), 557 F.2d 275; *United States v. McCormick* (4th Cir. 1977), 565 F.2d 286; *United States v. Lustig* (9th Cir. 1977), 555 F.2d 737, *cert. denied* (1978), 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796; *United States v. Marshall* (9th Cir. 1976), 532 F.2d 1279, 1287–88; *United States v. Harper* (9th Cir. 1976), 530 F.2d 828, *cert. denied* (1976), 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80; *United States v. Foss* (1st Cir. 1974), 501 F.2d 522, 530; *United States v. Smaldone* (10th Cir. 1973), 484 F.2d 311, 319–20, *cert. denied* (1974), 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469; *United States v. Umentum* (E.D.Wis. 1975), 401 F.Supp. 746, 748, *aff'd* (7th Cir. 1976), 547 F.2d 987, *cert. denied* (1977), 430 U.S. 983, 97 S.Ct. 1677, 52 L.Ed.2d 376; *United States v. Brookins* (D.N.J. 1974), 383 F.Supp. 1212, 1213–17, *aff'd* (3d Cir. 1975), 524 F.2d 1404. Contra *People v. Harman,* No. 79–2584FY (44th Cir. Mich. April 20, 1981)." *People v. McCarty, supra* 56 Ill.Dec. at 72–73, 427 N.E.2d at 152–53.

Although there may be some scientific basis for Kainz' argument that cocaine is not pharmacologically a narcotic drug, we agree with the overwhelming state and federal decisions that the Legislature has the authority to classify cocaine as a narcotic drug for control and penalty purposes.

---

**3.** We believe this case has particular significance because the same court earlier, in *People v. McCabe,* 49 Ill.2d 338, 275 N.E.2d 407 (Ill. 1971), held that the inclusion of marijuana under the Narcotic Drug Act rather than under the Drug Abuse Control Act was a deprivation of due process and equal protection. Under the Narcotic Drug Act a first conviction of the sale was punishable by a mandatory ten-year minimum sentence without probation, whereas under the Drug Abuse Control Act the first offender was subject to a maximum one-year jail term with probation available. Of significance also was the fact that while the case was pending on appeal the legislature removed marijuana from the Narcotic Drug Act and reclassified it under the newly enacted Cannabis Control Act which imposed only minor criminal penalties for first conviction of a sale of marijuana. The court acknowledged that in light of these facts it ruled that the gross disparity between the penalties violated the defendant's rights under the equal protection clause. The court also observed that no gross disparity of penalty is present under the current law and that the legislature made no attempt to reclassify cocaine or reduce the penalty attached thereto. In the instant case we have no information that the legislature even considered a reclassification or change. Therefore, the rationale that the Illinois court applied in the *McCabe* case would have absolutely no application here.

This brings us to the last issue, "Did the State prove the elements of the offense charged?" Kainz was charged with violating NDCC § 19–03.1–23(1)(a), which provides as follows:

"1. Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance; provided, that any person whose conduct is in violation of section 12–46–24, 12–47–21, or 12–51–11 shall not be prosecuted under this subsection with respect to:

a. a controlled substance classified in schedule I or II which is a narcotic drug, is guilty of a class A felony."

Kainz points out that the statute and complaint require that the State prove that he delivered a controlled substance which is classified in schedule I or II *and is a narcotic drug.* Kainz contended that the State did not prove that the controlled substance (cocaine) was a narcotic drug. We have already determined, based on impressive and overwhelming court decisions, that the Legislature has the authority to classify cocaine as a narcotic drug as it did in NDCC § 19–03.1–01(15) for control and penalty purposes.

The amended complaint, set out earlier herein, states that the defendant delivered a controlled substance known as cocaine in violation of NDCC § 19–03.1–23(1)(a), a class A felony. The parties actually stipulated that this took place and that the classification of cocaine as a narcotic was a legislative, rather than a scientific, classification. Accordingly, we believe the State did prove that Kainz delivered a controlled substance classified in schedules I or II and which is a narcotic drug pursuant to the definition in NDCC § 19–03.1–01(15).

We therefore conclude on the basis of the authorities cited earlier that the judgment of conviction should be and the same is hereby affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON, and VANDE WALLE, JJ., concur.