**UNITED STATES v. PIKE et al.**

**No. 9004.**

Circuit Court of Appeals, Seventh Circuit.

Nov. 14, 1946.

As Corrected on Denial of Rehearing Dec. 6, 1946.

Charles W. Hadley, of Wheaton, Ill., and John A. Nash and Arthur H. Schwab, both of Chicago, Ill., for appellants.

J. Albert Woll, U.S. Atty., and Bernard H. Sokol and Jack Arnold Welfeld, Asst. U.S. Dist. Attys., all of Chicago, Ill., for appellee.

Before SPARKS and KERNER, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

This is an appeal from a judgment of the District Court after a jury found the defendants, Silas Elbert Pike and Ernest C. Pike, guilty of using the United States mails in a scheme to defraud in violation of Section 338, Title 18 United States Code Annotated, Sec. 215, Cr.Code. The trial court imposed a sentence of five years imprisonment and a fine of $1,000 on each of seven counts, sentences of imprisonment to run concurrently.

The scheme employed by the defendants originated and was operated from the city of St. Charles, Illinois. Using the trade name of "Sunnyside Gardens," the defendants conducted an extensive solicitation of sums of money by mailing millions of postal cards addressed to persons known to be flower lovers and interested in the cultivation of gardens. A method employed by the defendants was the sending of the following postal card:

"Dear Friend: As you are a flower lover we have a wonderful Free Offer to send you. Just cut your name and address from this card and send it to us with 8 postal cards each addressed to a flower lover, together with 2 dimes, and we will mail you a $1.00 Surprise Collection to get acquainted. Answering within 10 days gives you an opportunity to receive a Premium of 6 lovely Handkerchiefs and 25 beautiful Flowering bulbs together with our Catalog. Thanks to a friend who made it possible for you to have this information.

"Sunnyside Gardens, Box 215, St. Charles, Illinois.

"P. S. Answering within a few days will include 2 lovely house plants for promptness."

If a recipient complied with the instruction printed on the postal card, he would

cut out of such postal card the part which bore his name on one side and the address of the Appellants on the reverse side, and send this by mail to appellants, with the sum of twenty cents and eight other blank postal cards stamped and addressed to his friends who were also interested in flowers. Immediately upon receipt at the defendants' building in St. Charles, these postal cards were placed in a mimeograph machine and the identical or a similar offer was printed on the back of each, and they were placed in the United States mails. Thereafter, four or five packets of seeds of various types were sent to some of those who had sent in their money and addressed postal cards; others received nothing at all. Recipients testified to having answered promptly but failed to receive the "premiums" indicated on the card.

The evidence indicated that the results obtained from planting the seeds were in many cases negative. Sometimes a seed produced a plant but usually it withered and died, although the recipients of the seeds were usually familiar with the cultivation of plant life, and were qualified to secure favorable results from the seeds if the same were reasonably obtainable.

In 1944 defendants sent with the seeds a slip of paper which read, as follows:

"Dear Customer: Due to war conditions the balance of your order will be sent later.

"You will positively receive it in due time."

The envelope containing the seeds had the following printed matter on the outside:

"Contents Merchandise

"Postmaster: This parcel may be opened for Postal Inspection if necessary
    From
Sunnyside Gardens, St. Charles, Ill.
Return postage guaranteed
    Information
"Your opportunity to receive a Premium of 6 lovely Handkerchiefs & 25 beautiful Flowering Bulbs.

"With any order for the following items will include 6 lovely Handkerchiefs and 25 beautiful Flowering Bulbs at no extra cost.

"No. 1 Will mail postpaid 15 assorted Hardy Irises roots for only $2.00.

"No. 2 Will mail postpaid 6 Magnificent Double Peony roots for only $2.00.

"No. 3 Will mail postpaid 9 assorted Cactus plants for only $2.00.

"The above offers are made for building new business. Satisfaction Guaranteed or money refunded. Send for our Catalog today.
    Free Offer
"Will send a Vitamin B-1 tablet Free. Fragile."

None of the witnesses who testified received the handkerchiefs or flowering bulbs. One witness obtained a Vitamin B-1 tablet. It does not appear from the record whether any of the witnesses responded to the invitation to make a $2 purchase.

The scheme was conducted by the defendants, Silas Elbert Pike and Ernest C. Pike, with the assistance of members of their immediate family, Dorcas Pike, a sister, Stella Pike Nelson, a sister, and C. Kelly Nelson, a brother-in-law. No person, other than a member of the immediate family, held any position of authority. The chief responsibility for the operation of the scheme was that of the two defendants. Each worked in the office, employed and supervised help, distributed the work to various assistants, and delivered and picked up mail at the post office at St. Charles, Illinois. Silas Elbert Pike operated the mimeograph machine.

Mail was received from the defendants under the trade style "Sunnyside Gardens" from 1940 until 1944. The defendants used various postoffice box numbers on their original postal cards, 215, 200 and 219, as part of their address when, in fact, they had no such postoffice boxes, and continued to use such numbers after a conversation with the postmaster about their impropriety. The cancelling machine records of the postoffice at St. Charles showed that in 1944, in a period of less than six months, the defendants mailed 2,979,000 postal cards. They received in a three-month period, April, May and June of 1944, approximately 5000 replies a day. Each such re-

ceipt contained either twenty cents, or a larger sum of money, and eight or ten postal cards. Two extra postoffice substitute clerks were employed at the postoffice at St. Charles, Illinois, to handle mail of the defendants alone. The Postoffice Department received numerous complaints from persons who had replied to the solicitation of the defendants, and as a result a postoffice inspector requested permission to visit the building at St Charles, from which the defendants operated the scheme. He visited the site on two occasions and was denied admission and information each time by the defendant Silas Pike.

No handkerchiefs or catalogs, such as are mentioned in the offer mailed by the defendants, were delivered to the postoffice at St. Charles for mailing and no handkerchiefs were ever available upon the premises of Appellants with which they could have fulfilled this portion of the "opportunity" offered. Few "house plants," such as are referred to in the postal card used by the defendants, were mailed by them prior to the visit of the postoffice inspector, and thereafter but 1200 plants were mailed. These so-called "plants" were mailed to the recipients either too late for planting or in such condition that they could not be cultivated. But 20 bulbs were mailed in 1944.

The building at St. Charles, Illinois, from which the Appellants operated bore no signs identifying the building. A passerby would not be able to discover that this was "Sunnyside Gardens" or otherwise identify it with the operations of the Appellants. The entrance was difficult to find, and the Appellants themselves were extremely secretive and a reluctant source of information. Defendants used mailing permits under the trade styles "Sunnyside Gardens" and "Pike Brothers." One witness testified that she had received a card containing an offer of some giant Darwin tulip bulbs for testing signed by "Pike Brothers," which offer had requested that she send in self-addressed postal cards. She addressed these cards with the names of flower lovers, one of whom was her uncle. Later, she saw the identical card on her uncle's table and identified that card as having been the one which she had addressed.

This card, however, bore the signature "Sunnyside Gardens."

Appellants have suggested eight contested issues to be considered upon this appeal, but same may be condensed to these: Whether there was sufficient evidence to submit the case to the jury; whether the court erred in admitting oral or secondary evidence, and in sustaining objections to cross-examination of certain government witnesses; whether Appellants were entitled to notice of an intention of the government to prove certain documents in Appellants' possession of an incriminating character by secondary evidence; and whether the court committed reversible error in instructing the jury.

Upon the first question it is contended by Appellants that the government submitted no direct evidence that the promises made by the postal card and other documents mailed by the defendants were not made in good faith and intended to be carried out. The evidence submitted to the jury included the testimony of thirty witnesses and a large number of exhibits. Much of this evidence bore upon the scheme, and directly or by direct inference related to the intention of the defendants to make and carry out a scheme such as that with which they are charged. On this appeal we must take that view of the evidence most favorable to the government and sustain the finding of the jury if there is substantial evidence to support the conviction. It was not necessary that the government prove its case by direct evidence, but it is sufficient that any or all essential facts were supported by substantial circumstantial proof. In United States v. Monarch Distributing Co., 7 Cir., 116 F.2d 11, 13, in commenting upon the contention that there was no direct evidence of an intention to commit the offense charged, we said:

"It is next insisted that the fact that appellants did not record the purchase on the day the liquor was received, does not constitute the making of a false entry. To be sure, to constitute the offense of neglecting to make the entry, there must not only be an omission to make the entry, but the

failure must be intentional. Arrow Distilleries v. Alexander, 7 Cir., 109 F.2d 397, 406. Whether the omission was due to carelessness or design was the province of the District Court to determine from the evidence. In passing upon the sufficiency of the proof, it is not our province to weigh or determine the credibility of witnesses. We must take that view of the evidence most favorable to appellee and sustain the finding of the trial court if there be substantial evidence to support it. The trial court found the Appellants guilty, thus, necessarily, it found that the omission was intentional or by design and we agree there was ample proof of acts and that the reasonable inference flowing therefrom warranted a finding that the appellants acted in bad faith and knowingly violated the statute."

The Supreme Court in United States v. 95 Barrels of Vinegar, 265 U.S. 438, 44 S.Ct. 529, 531, 68 L.Ed 1094, said:

"Deception may result from the use of statements not technically false or which may be literally true."

See also Winner v. United States, 7 Cir., 33 F.2d 507, and Corbett v. United States, 8 Cir., 89 F.2d 124.

The facts in this case indicate that the Appellants had little, if any, concern as to the value or quality of the seeds mailed out. They sent many after the planting season was over. An impartial consideration of the evidence would warrant the jury in believing that the seeds in question were substantially worthless and known by Appellants to be worthless.

Appellants contend that all they offered for twenty cents and eight cards was the collection of these seeds and that it was not their intention that the recipients thereof understand that they would receive any additional material. To so conclude requires a strained construction of the language used and not one to be generally adopted and understood by recipients of the offer. If the seeds were of no value, the fraud was consummated without reference to further steps to be taken by recipient or Appellants. However, the "house plants" promised for a prompt response had been offered by Appellants to their alleged victims for two years prior to the visit of the postoffice inspector in June of 1944, but few had been sent prior to this date. After such visit and warning, the conduct of Appellants was varied to include the mailing out of 1200 substantially worthless plants.

Although Appellants had enough help to carry on all other aspects of their operation, and experienced no difficulty in handling the mail incident thereto and getting the dimes into the slots on the mailing tables, it is now contended that the delay was due to war conditions. The jury was entitled to consider all facts, including those last above mentioned, and to consider whether the same could be reconciled with an honest intention. They determined this question adversely to Appellants and upon the record this court cannot say that there was not substantial evidence to sustain the finding of the jury.

Appellants contend that it was prejudicial error to admit evidence against the defendants, identified under the trade style of "Sunnyside Gardens" in the nature of postcards and other communications issued under the name of "Pike Brothers Seed Company" or "Pike Seed Growers." It is sufficient that the connection of Appellants with "Sunnyside Gardens" and as "Pike Brothers Seed Company" and "Pike Seed Growers," doing business in each instance in the same manner and from the same place and in some instances with the same people, was established by the testimony of at least one witness, as well as the local postmaster, and by other facts and circumstances in the case.

Appellants claim they were prejudiced by permitting one witness to testify in respect to a conversation with a person upon Appellants' premises who was not identified. We have examined the testimony in question and fail to find wherein its admission was in any respect prejudicial. They also claim to have been prejudiced through the admission of secondary evidence of the contents of certain postcards, of the nature hereinbefore mentioned without previous notice to the Appellants to produce the card as the best evidence. Since the postcards were a part of the gov-

ernment's case, intended to incriminate the Appellants, they could not have been compelled to produce them. Under such circumstances it was not error to receive such testimony. McKnight v. United States, 6 Cir., 115 F. 972, 980, Hanish v. United States, 7 Cir., 227 F. 584. In pursuit of this point, Appellants also argue that they should have been given notice to produce the cards in question for their own use. Since the indictment against them contained specific allegations of twenty-three separate mailings of every kind of postal card offered in evidence together with complete information as to the names of the addressees thereof, Appellants were already upon notice, and no prejudice could have resulted from a failure to give such notice. There was no substantial variance between any secondary evidence offered and the postal cards alleged in the indictment and admitted in evidence.

■ It is further contended that Appellants were prejudiced by the sustained objections to cross-examination of the government witnesses, by which counsel for Appellants sought to have the witnesses describe the "opportunity" which was offered them by Appellants. It is Appellants' contention that all that was offered was an "opportunity to receive" the certain items specified upon the conditions stated. The actual "opportunity" afforded by Appellants is shown by the written documents sent through the mail, alleged in the indictment and in evidence. By the questions asked, Appellants, in the absence of other showing, could only have shown what was an uncontroverted fact. It is our view that the affording of the "opportunity" in question is only an incidental part of the entire scheme to defraud as developed by the evidence. It was the good faith which attended its making and not the conceded form of the offer that was important. No prejudice could have resulted from the ruling complained of.

■ Objections are also raised to the giving and refusing of certain instructions to the jury. It would unnecessarily prolong this opinion to discuss each. It is sufficient to say that we have carefully examined the instructions given by the trial judge and find that they are substantially free from prejudicial error. It was unnecessary to give any specific instruction in the exact form requested provided the jury was fully and fairly instructed upon the case as a whole. We think the refused instructions were fairly embraced within both the substance and spirit of the court's charge and that Appellants have had a fair trial.

The judgment is Affirmed.