**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Walter PRITCHARD, a/k/a Walter
O'Roarke, Defendant-Appellant.**

**No. 18341.**

United States Court of Appeals,
Seventh Circuit.

Feb. 2, 1972.

Rehearing Denied March 10, 1972.

Certiorari Denied June 12, 1972.
See 92 S.Ct. 2434.

Jerome Rotenberg, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Thomas T. Dent, Chicago, Ill., William J. Bauer, U. S. Atty., Chicago, Ill., for plaintiff-appellee, John Peter Lulinski, Asst. U. S. Atty., of counsel, Allan Shapiro, Legal Intern, Northwestern University School of Law.

Before CASTLE, Senior Circuit Judge, and KILEY and STEVENS, Circuit Judges.

CASTLE, Senior Circuit Judge.

Walter Pritchard, the defendant-appellant, prosecutes this appeal from a judgment order of conviction and sentence entered by the District Court following defendant's trial before a jury on a two-count indictment charging him with conspiracy[1] to violate 18 U.S.C.A. § 1952, and with a substantive offense in violation of that Section. The jury found the defendant guilty as charged, and the court imposed a general sentence of three years imprisonment and a fine of $5000.

The defendant predicates the existence of trial error which requires a reversal of his conviction on his contentions that the District Court erred in denying his pre-trial request for a hearing to determine if defendant was prejudiced by pre-indictment delay; in the admission of a witness' testimony concerning his state of mind; in the giving and the refusal to give certain instructions to the jury; and that the prosecutor's closing argument was improperly prejudicial to the defendant.

The indictment was filed November 25, 1968, and a bench warrant for defendant's arrest was issued the same date. Count One charges the defendant with conspiracy which is alleged to have begun on or about August 1, 1963, and to have continued until on or about June 30, 1964. Count Two charges a substantive violation of 18 U.S.C.A. § 1952 on or about January 7, 1964. Thus there is an interval of almost four and one-half years between the alleged criminal activities and the return of the indictment. Prior to trial the defendant filed a motion to dismiss the indictment grounded on the assertion, *inter alia*, that this pre-indictment delay was a violation of his Sixth Amendment right to a speedy trial and of his Fifth Amendment right to due process. The motion asserted that:

"... as a result of this unreasonably oppressive and unjustifia-

---

1. In violation of 18 U.S.C.A. § 371. William Wangard was named as an unindicted co-conspirator.

ble delay, this defendant will be seriously hampered and prejudiced in preparing a proper defense and assisting his counsel in preparing a defense to the charges of this indictment."

The motion concluded with a prayer that the indictment be dismissed, "or in the alternative that this Court conduct a pretrial hearing to determine whether the delay of over four and one-half years in instituting this prosecution was prejudicial to the defendant". The District Court denied the motion in its entirety.

Following the briefing and oral argument in this appeal the Supreme Court of the United States handed down its opinion in United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468. In *Marion* it is held that there is no need to press the Sixth Amendment into service to guard against the mere possibility that pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function. Here, as in *Marion*, the delay between the end of the scheme charged in the indictment and the date the defendant was indicted did not extend beyond the period of the applicable statute of limitations,[2] and the defendant was not arrested, charged, or otherwise subjected to formal restraint prior to indictment. It was the indictment, therefore, which transformed Pritchard into an "accused" who is subject to the speedy trial protections of the Sixth Amendment.

In rejecting the claim of violation of the Fifth Amendment right of due process asserted in *Marion* the Supreme Court pointed out that the statute of limitations does not fully define a defendant's rights in the context of pre-indictment delay. But the Court did not reach the issue as to when and in what circumstances actual prejudice resulting from a pre-accusation delay may require the dismissal of the prosecution. In this connection the Court observed that on the record before it "no actual prejudice to the conduct of the defense is alleged" and that "at the present time appellees' due process claims are speculative and premature". Accordingly, in *Marion* the Court reversed the district court's dismissal of the indictment there involved. In the instant case the defendant's assertion of prejudice is a wholly conclusory allegation. No specific actual prejudice is factually alleged. The rationale of *Marion* is equally applicable here. Mere "delay" does not equate with "actual prejudice". And, the defendant alleged nothing in his motion which entitled him to an evidentiary hearing on an issue of actual prejudice alleged to have resulted from the delay. His motion speaks only of a potential prejudice predicated on the pre-indictment delay itself. Moreover, no actual prejudice was shown at the ensuing trial. *Cf.* United States v. Lee, 7 Cir., 413 F.2d 910.

Wangard, the unindicted co-conspirator, testified for the government. His testimony may be summarized as follows. In January 1964 the defendant and Walter Wangard traveled from Chicago, Illinois, to New Orleans, Louisiana, and from there to Miami, Florida, for the purpose of effectuating a past-post betting scheme which would involve the placing of off-track bets with Chicago bookies. The scheme was designed to take advantage of the time lag between the time a race is run at one place and the information gets to Chicago via the wire services. The plan required three people. One would be inside the track with a transmitter, the second person would be outside the track in a car with a receiver awaiting the race result from the inside man, and upon its receipt would then telephone defendant's apartment in Chicago to relay the name of the winning horse to a third person who was to place the bet. Wangard, who was an electronics design engineer, built the electronic equipment for the defendant. He was aware that the defendant

2. 18 U.S.C.A. § 3282.

was a private investigator who engaged in surveillance work. When the defendant asked him to build the receiver-transmitter pair used in the operation it was his first impression that the defendant intended to use it in surveillance operations. The defendant later explained his past-post betting scheme and asked Wangard to join in it. On the first day at New Orleans Wangard acted as the inside man. The next few days he acted as the outside man. He received the defendant's transmission from the track and relayed the result of the race by telephone to Chicago to the party who was to place the bet. They left New Orleans for Miami after the defendant told Wangard that none of the attempted bets were being finalized because the wire services were too fast in getting the race results to Chicago. At Miami Wangard was exclusively the inside man. After he had so acted for three days the defendant told him he had found a replacement for him. Wangard then returned to Chicago. He was subsequently contacted by the FBI and told that if he cooperated he would be called as a witness but not prosecuted. The defendant later questioned Wangard concerning what Wangard had told the FBI. Wangard told the defendant that he had told the FBI that he did not transmit or receive any race results; that he thought the defendant was in New Orleans and Miami on some sort of industrial espionage work; that the witness' work there was strictly technical as far as the electronic equipment was concerned; and that he had been left alone a lot of the time, and had gone to the race track because he had nothing better to do. Wangard further testified that he told those things to the defendant because he was afraid of what the defendant might do if the defendant knew that the witness had told the FBI the truth.

Other government witnesses gave testimony which corroborated Wangard's testimony insofar as it related to the presence of the defendant and Wangard in New Orleans and Miami on the dates involved. And an electronics technician who had modified some walkie-talkie equipment for the defendant testified with respect to two conversations with the defendant in October of 1963 relating to the time differential between the finish of a horse race and the time the wire services get the information to Chicago. The witness stated that in the second conversation the defendant inquired concerning the feasibility of using a citizen's band radio for transmitting information from a race track, and that the witness advised the defendant that it would be a highly dangerous operation because the citizen's band is monitored by both the FCC and the race track operators. In response to further questions the witness advised the defendant that other equipment could be built which would be safer to use.

The evidence on the defendant's behalf consists of the testimony of Joseph McClellan who had advanced money to Wangard for his return to Chicago from Miami. He knew Wangard as a patron of a tavern the witness operated. The witness stated that when Wangard telephoned him to request the money Wangard stated that he was in Florida working on an industrial espionage case with the defendant. The witness further testified that Wangard's reputation for truth and honesty was bad.

■ The defendant contends that the trial court erred in permitting the government's witness Wangard to testify on re-direct examination, over the defendant's objection, that the reason his statements to the defendant as to what he had told the FBI were inconsistent with what he had actually told the FBI was because he feared what the defendant might do if the defendant knew he had told the truth to the FBI. The defendant argues that this testimony as to the witness' state of mind had no probative value as to any relevant or material issue and permitted an inference prejudicial to the defendant without any foundation that the defendant had in any manner threatened the witness. We perceive no error in the trial court's ruling. On cross-examination Wangard

had been questioned about his conversations with the defendant after Wangard had been interviewed by the FBI. Wangard had admitted making statements to the defendant which were inconsistent with Wangard's testimony on direct examination. The prior statements of the witness inconsistent with his trial testimony were elicited on cross-examination and constituted an attempt to impeach the witness. Under these circumstances the government was entitled to have the witness explain the inconsistency. United States v. Scandifia, 2 Cir., 390 F.2d 244; Carbo v. United States, 9 Cir., 314 F.2d 718; United States v. Franzese, 2 Cir., 392 F.2d 954, vacated on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297.

█ The defendant contends that the court erred in its instruction relating to the credibility of an accomplice witness because in defining an accomplice as one who voluntarily participates in the commission or planning of a crime it incorporated the statement that "the witness William Wangard is an accomplice of the accused in this case". For the reasons stated in United States v. Fellabaum, 7 Cir., 408 F.2d 220, where an identical instruction was given, we reject the contention of the defendant that the instruction requires a reversal of the defendant's conviction. Likewise, the instructions given by the court relative to the determination of the credibility of witnesses and the weight to be given a witness' testimony, and which were given in juxtaposition with the instructions on accomplice testimony, were such that on this record it is our opinion that the court did not err in refusing to give the specific instruction covering the same subject tendered by the defendant. Where the jury is fully and fairly instructed upon the case as a whole it is unnecessary to give any specific instruction in the precise form requested by the defendant. United States v. Pike, 7 Cir., 158 F.2d 46, 51; United States v. Donovan, 7 Cir., 339 F.2d 404, 410. Nor, in our judgment, did the court err

in refusing to give the "theory of defense" instruction tendered by the defendant. Not only was the proposed instruction argumentative in form, but it was also without adequate foundation in the evidence. It was based only on tangential references in the testimony that the defendant's occupation was that of private investigator, upon Wangard's admitted fabrication in advising the defendant that Wangard had told the FBI that the presence of the defendant in New Orleans and Miami was for the purpose of industrial espionage, and Wangard's similar statement to McClellan when he telephoned from Florida for money. Insofar as evidence to support a conclusion that the defendant's interstate travel and his subsequent activities in New Orleans or Miami were related to industrial espionage work is concerned, the record is barren.

█ In its argument to the jury the government in commenting upon the testimony of Wangard characterized it as being "true and correct, it is believable" and stated "there is nothing to controvert it". No objection was interposed by the defendant. We recognize that there are situations where a remark similar to the latter, i. e., that a witness' testimony is uncontradicted, has been held to constitute prejudicial error requiring a reversal. It was so recognized in United States v. Handman, 7 Cir., 447 F.2d 853, where it was apparent from the record that there was no one other than himself whom the defendant could have called to contradict the testimony, the remark was objected to, and no cautionary instruction given the jury to disregard it. Under such circumstances such a statement by the prosecution amounts to prejudicial comment on the defendant's failure to testify, and it falls within the purview of the interdiction contained in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. In this connection see also the admonition recently given in United States v. Flannery, 1 Cir., 451 F.2d 880, 882. But in the instant case it is not indicat-

ed that no one other than the defendant could have contradicted Wangard's testimony. And, viewed in its context, the remark that the witness' testimony was true and believable was not an improper vouching for a witness' testimony such as was condemned by this Court in United States v. D'Antonio, 7 Cir., 362 F.2d 151, 155. See: Lawn v. United States, 355 U.S. 339, 359, footnote 15, 78 S.Ct. 311, 2 L.Ed.2d 321. Thus there is no basis for concluding, on this record, that either of the remarks constituted plain error requiring a reversal pursuant to Rule 52, Fed.Rules of Crim.Proc.

During the closing argument the prosecutor in commenting upon McClellan's testimony with respect to Wangard's reputation for veracity stated: "I don't believe Mr. McClellan liked Mr. Wangard, and I think any defense attorney can go and find someone who doesn't like you or me". The defendant objected and the court cautioned the prosecutor to keep his conjectures within the realm of possibility. The defendant urges that we reverse on the basis that the prosecutor's comment prejudicially suggested an impropriety on the part of defense counsel. The remark of the prosecutor was improper, but in the context of the court's admonishment to counsel we see no basis for concluding that the incident was of particular significance. The observation in Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680, that we "must guard against the magnification on appeal of instances which were of little importance in their setting" is apposite here. And, as pointed out by this Court long ago in United States v. Goodman, 7 Cir., 110 F.2d 390, 395:

> "It is only fair to jurors to assume that they do not always take counsel as seriously as counsel, in the heat of argument, take themselves."

The judgment order of conviction and sentence entered by the District Court is affirmed.

Affirmed.