**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Patrick GREEN, Defendant-Appellant.**

No. 84–1197.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 1984.

Decided Dec. 26, 1985.

William H. Theis, Chicago, Ill., for defendant-appellant.

Daniel A. DuPre, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and DOYLE, Senior District Judge.*

COFFEY, Circuit Judge.

The defendant, Patrick Green, was convicted of willfully and knowingly conspiring to possess the chemical piperidine knowing and having reasonable cause to believe that the piperidine would be used to manufacture phencyclidine (PCP) in violation of 21 U.S.C. § 846 [1] and of individually knowingly and intentionally possessing piperidine knowing and having reasonable cause to believe that the piperidine would be used to manufacture phencyclidine (PCP) contrary to 21 U.S.C. § 841(d)(2).[2] The defendant appeals his convictions. We affirm.

I.

On May 27, 1983, a federal grand jury in the Northern District of Illinois returned a three-count indictment against the defendant, Patrick Green, and Jose Burgos and William Steffy. Count 1 of the indictment charged that Green, along with Burgos and

---

* The Honorable James E. Doyle, Senior District Judge of the Western District of Wisconsin, is sitting by designation.

1. 21 U.S.C. § 846 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

2. 21 U.S.C. § 841(d)(2) provides: "Any person who knowingly or intentionally—... possesses any piperidine knowing, or having reasonable cause to believe, that the piperidine will be used to manufacture phencyclidine except as authorized by this subchapter, shall be sentenced to a term of imprisonment of not more than 5 years, a fine of not more than $15,000, or both."

Steffy violated 21 U.S.C. § 846 in that they "wilfully and knowingly did combine, conspire, confederate, and agree together to commit certain offenses against the United States, namely: knowingly and intentionally to possess a quantity of the chemical piperidine knowing and having reasonable cause to believe that the piperidine would be used to manufacture Phencyclidine (PCP), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(d)(2)." Count 1 also recited that Green's overt act in furtherance of the alleged conspiracy was the procurement of a bottle of piperidine for Burgos and Steffy in March 1982 to be used for the manufacture of PCP. Count 2 charged that Green, Burgos and Steffy "knowingly and intentionally did possess a quantity of the chemical piperidine knowing and having reasonable cause to believe that the piperidine would be used to manufacture Phencyclidine (PCP), a Schedule II Controlled Substance; In violation of Title 21, United States Code, Section 841(d)(2)." Green entered a plea of not guilty to these charges on July 8, 1983.[3]

On July 22, 1983, Green filed various pre-trial motions, including motions to dismiss Counts 1 and 2 of the indictment. The court considered the defendant's motions at an August 26, 1983 hearing, and at this same hearing the Government orally moved the court to sever Green's trial from that of Burgos and Steffy. By a written order dated August 31, 1983, the court granted the Government's motion to sever Green's trial from that of the other defendants and denied Green's motions.

The Government next filed a motion requesting that Green's trial be reassigned to another judge. In another motion the Government requested that the court exclude from the 70-day time period of the

Speedy Trial Act[4] the period from August 31 until the date the case was reassigned. On October 24 the court ruled on the two motions, denying the request to reassign the case, and *sua sponte* directed that the period of time from July 22, the date Green filed his pre-trial motions, until the date the court ruled on the pre-trial motions, August 31, be excluded from the computation of the 70-day time period of the Act. The court also excluded the time from August 26 until August 31 because "the ruling was not to be made until the opinions had been completed and issued and so that would be ruling by mail, in effect, and the official date would be the date of the completion of the ruling and that was August 31." At the August 26 hearing, the court stated with respect to Green's pre-trial motions:

"[W]hat I am going to do with respect to those two [motions] is not to read the sort of initial draft of the opinion that we are going to write on that because it is just going to take too much time but we are going to deny the motions on both theories, the motion to dismiss Count 1 and 2 and the motion to dismiss Count 1. On the motion for a Santiago hearing, I will indicate that orally, even though, again, that will be a part of a written order on this—and all of these will be effective as of the date that they are issued, and, in effect, I am ruling by mail on all of these but I do want to let you know exactly what the rulings are."

At the conclusion of the hearing on August 26, the court again stated, "All right. That will be the orders and they will be out just as quickly as we can get them out, in the next day or two. They will be effective as of the dates that appear." In addition, the district court's minute order from the August 26 hearing recites: "Status hearing held. Ruling on pretrial motions to follow. Status hearing and ruling on any pending

---

**3.** Count 3 charged Burgos and Steffy with knowingly and intentionally distributing cocaine in violation of 21 U.S.C. § 841(a)(1).

**4.** Title 18 U.S.C. § 3161(c)(1) provides:
"In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."

motions continued to October 7, 1983 at 12:00 noon." The court set a trial date of October 26, 1983, but adjourned the date to the day following at the request of Green's counsel and also excluded that one day from the Speedy Trial Act computation. Green's counsel requested the one day adjournment as he was engaged in a trial on an unrelated matter on October 26 and would not have been available to represent Green. On October 27, 1983, the court granted the defendant's second request for an adjournment as the defendant Green was unavailable for trial on that date for reasons undisclosed in the record, and rescheduled the trial for November 14, 1983. Once more the court excluded the time period from October 27 through November 14 from the Speedy Trial Act computation as the adjournment was requested by the defendant.

On November 14, immediately before trial, Green moved to dismiss, claiming that the Government failed to bring him to trial within the 70-day time limit set forth in the Speedy Trial Act. 18 U.S.C. § 3161. Specifically, the defendant argued that the court was in error in ruling that the five day time period between August 26 and August 31 was excludable time under the Act. Green argued that the court had given a final ruling on defendant's pre-trial motions at the August 26 hearing, and its August 31 order was merely a written embodiment of the ruling. The court rejected this argument and denied Green's motion.

At trial the Government presented the testimony of several Drug Enforcement Administration undercover agents who testified that Green had stolen a bottle of piperidine from his employer, the Borg-Warner Corporation, as part of a conspiracy with Burgos and Steffy to manufacture phencyclidine (PCP). Green testified that he accomplished the theft of a bottle of piperidine by adding piperidine to a purchase order for chemicals after his supervisor at Borg-Warner had approved and signed the purchase order. Green also admitted under oath that he gave the piperidine to Burgos in exchange for a quantity of cocaine and that he had personally used cocaine in the past, but denied any knowledge of, or any involvement in a plan to manufacture PCP.

After trial, during the jury instruction conference, the defense counsel submitted a number of requested instructions, including: "The relationship of buyer and seller, absent any prior or contemporaneous understanding beyond the sales agreement itself, does not prove a conspiracy to possess piperidine with knowledge or reasonable cause to believe that phencyclidine will be manufactured." The Government objected to this instruction stating it was argumentative and the court agreed. Green's counsel argued that the instruction was "a correct statement of the law" and was the "flip side" of the Government's requested instruction. The court proposed a modification to the Government's requested instruction in lieu of accepting the defense counsel's instruction. The defense counsel replied, "Every purchase and sale is an agreement. The jury needs to be told which agreements count." The court then suggested to further modify the Government's instruction to provide: "If persons enter into an agreement for an unlawful purpose they become agents for one another for that purpose." The court noted that adding "for that purpose" to the instruction "obviates the problem about the technical agreement between buyer and seller." The Government agreed to this modification, but the record is silent as to whether the defense counsel made any further comment or objection. The court adopted its own modified instruction after hearing no objection from either the prosecutor or the defense counsel, and submitted the modified instruction to the jury.

While the jury was deliberating, a deputy United States marshal escorted the jurors to a local restaurant for dinner. Upon returning to the court, the marshal filed a report with the court disclosing that as he led the jurors to their seating area in the restaurant, he passed a group of people seated at a table he recognized as federal employees and mentioned that he was escorting a jury. According to the marshal's

report, "one of the persons [at the table] spoke out loudly, 'Guilty!'" Because he thought that several jurors might have heard the remark, the marshal returned to the speaker and took him aside to learn his identity and to question him about the remark. The court, after reviewing the report, turned the marshal's report over to the prosecutor and the counsel for the defense out of the presence of the jury and thereafter put the marshal under oath and allowed the respective counsel to examine and cross-examine him. The marshal testified that he was nine or ten feet away from the individual when he heard the word "Guilty!", and at this time he observed no manifestation of surprise, interest or recognition on any of the jurors' faces. In response to a question on cross-examination, he expanded on this testimony and stated that in his opinion, the jurors did not appear to have paid any attention to the remark even if they had in fact heard it, and continued on with their own private and relaxed conversations. After reviewing the marshal's report and hearing his testimony, Green made a motion for a mistrial. The court adjourned the proceedings for the evening and resumed the hearing on the incident on the following day.

The next day the court heard testimony from the person who had allegedly made the remark, and from another individual seated at the same table. The speaker, an Internal Revenue Service agent, testified that he had not heard the marshal mention that jurors were present and that he was discussing a search warrant episode he had participated in the previous weekend. The fact situation he was discussing related to an entirely different case, and he stated, "Based on all that I am sure that they are guilty," referring exclusively to the individuals who were the subjects of the search warrants they (the agents) were discussing. The other witness, also an agent of the IRS, corroborated the speaker's testimony. The court found the testimony of the marshal, the speaker and the other IRS agent to be credible, stating, "I do not find [the speaker] deliberately shouted at the jury or that there was any attempt in any way to influence the jury in connection with this case," and suggested that the incident was the result of an "unfortunate combination of circumstances." The court then set about to discuss with the respective counsel possible approaches to be used in questioning the jurors "to determine whether anyone [on the jury] ... heard anything and ... whether it had any effect at all on their deliberations[.]" The court decided to conduct a post-verdict examination of the jurors in accordance with the guidelines of Rule 606(b)[5] of the Federal Rules of Evidence to determine what, if any, awareness they had of the remark.

During this period of time the jury was deliberating and shortly thereafter returned verdicts of guilty as to both counts in the indictment. After the return of the verdicts, the court proceeded to examine all the jurors individually with respect to the "Guilty!" remark allegedly made in their presence the previous evening. Of the twelve jurors, only one testified as having heard any remark, and he testified that he "just forgot about it immediately until you brought it up just now," and that "[i]t was just such a quick thing that I don't really have any clear recollection of it." In response to the court's questioning, this same juror also stated, "No one acknowledged having heard it and no one, to my knowledge, acted as though they had been affected by it, by any comment of that nature."

---

**5.** Rule 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Fed.R.Evid. 606(b).

The court continued to interrogate all of the jurors, and concluded that "each of the juror's testimony was very credible." The court determined from their testimony and made a finding that their verdict had not been influenced in any manner by the alleged "Guilty!" remark and entered a judgment of guilty against the defendant in accordance with the jury's verdict.

The court denied Green's subsequent motion for a new trial based on the jury incident, stating, "I am absolutely convinced beyond any reasonable doubt that none of the jurors were at all affected by it."

The court suspended sentence on Counts 1 and 2 and placed Green on concurrent terms of probation for a period of five years on the condition that he reside in and participate in a work release program for three months, perform one hundred hours of community service as directed by the U.S. Probation Office, and receive drug abuse counseling and monitoring as directed by the U.S. Probation Office. Green appeals his convictions on several grounds. He contends that Count 1 of the indictment failed to charge a cognizable offense as he argues that Count 1 charged him with willfully and knowingly conspiring to commit a negligent act, that the Government failed to prove that PCP was ever actually manufactured with the piperidine in question as Green believes is required for conviction on Count 2, that the court erred in refusing to give a requested jury instruction concerning the difference between a conspiracy and a "buyer-seller relationship," that he was not brought to trial within the 70-day time period mandated in the Speedy Trial Act, and that the court applied an incorrect legal standard in denying Green's motion for a new trial based on an improper contact with the jury during a dinner break from its deliberations.

## II.

On appeal, Green renews the argument initially presented in his pre-trial motion to dismiss Count 1 of the indictment. He contends that count one failed to charge a cognizable offense because "it is legally impossible to *conspire* to a possession that requires *reasonable cause to believe* that the possessed item will be used for a particular purpose"—that is, to conspire to possess piperidine "knowing or having reasonable cause to believe" that the piperidine will be used to manufacture PCP. The defendant posits that the phrase " 'reasonable cause to believe' appears to set up a standard of negligence or recklessness that is different from knowledge," without providing any authority for this novel legal theory. Using this interpretation, Green argues that one cannot conspire to violate § 841(d)(2) because "[i]t is a logical impossibility to conspire to commit a negligent act."

 The district court properly rejected this argument as "erroneous and misleading" as § 841(d)(2) does not criminalize a negligent or reckless act. Section 841(d)(2) provides criminal sanctions for "Any person who *knowingly* or *intentionally*—... possesses any piperidine knowing, or having reasonable cause to believe, that the piperidine will be used to manufacture [PCP]." We agree with Green that Congress did not criminalize the mere possession of piperidine; rather Congress did criminalize the knowing and intentional possession of piperidine by one who has the intention to manufacture PCP or who knows or has reasonable cause to believe that the piperidine will be used to manufacture PCP. 21 U.S.C. § 841(d)(1) and (2). We do not accept Green's legally unsupported interpretation of Count 1 as stating that he willfully and knowingly conspired to commit a negligent act, as the object of the conspiracy charged was the *knowing* and *intentional* possession of piperidine knowing and having reasonable cause to believe that it would be used to manufacture PCP. A conspiracy conviction under § 846 requires "the existence of an agreement between two or more individuals, with the intent to commit an offense in violation of the Controlled Substance Act," *United States v. Sweeney*, 688 F.2d 1131, 1140 (7th Cir.1982), and "[t]he mental state

required for a conspiracy conviction is no greater than that necessary to commit the underlying substantive offense." *United States v. Zarattini*, 552 F.2d 753, 760 (7th Cir.), *cert. denied*, 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1977); *see also United States v. Umentum*, 401 F.Supp. 746, 750 (E.D.Wis.1975), *aff'd*, 547 F.2d 987 (7th Cir.1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977). In the present case, it is sufficient that the indictment charged Green with willfully and knowingly conspiring to knowingly and intentionally possess piperidine knowing and having reasonable cause to believe the piperidine would be used to manufacture phencyclidine (PCP).

### III.

■ Green argues with respect to Count 2 that proof beyond a reasonable doubt that the piperidine in question was actually used to manufacture PCP is a necessary element for conviction under 841(d)(2). We disagree. Section 841(d)(2) provides in pertinent part:

> "Any person who knowingly or intentionally—... possesses any piperidine knowing, or having reasonable cause to believe, that the piperidine will be used to manufacture phencyclidine except as authorized by this subchapter, shall be sentenced to a term of imprisonment of not more than 5 years, a fine of not more than $15,000, or both."

Green has failed to present any support for his novel theory of law nor any language from the legislative history of this statute, much less any caselaw in support of his interpretation. Indeed, the plain language of the statute reveals that Congress intended to impose a broad prohibition against the manufacture of PCP, criminalizing both the actual manufacture of PCP as well as the possession of piperidine (an essential ingredient of PCP) when knowing or having reasonable cause to believe the piperidine would be used to manufacture PCP. *See* 7 U.S.Code Cong. & Adm.News 9518–9522 (1978).

Green attempts to analogize § 841(d)(2) to other similarly constructed criminal statutes. Specifically, he cites *United States v. Kraase*, 484 F.2d 549 (7th Cir.1973), as controlling on the facts of this case. In *Kraase*, the defendant, a Wisconsin resident, was charged with selling a firearm to an undercover federal agent who represented himself to the defendant as being an Illinois resident when in fact both he and the defendant were Wisconsin residents. The defendant was convicted of violating 18 U.S.C. § 922(a)(5) prohibiting the sale of a firearm to anyone "who the transferor knows or has reasonable cause to believe resides in any State other than that in which the transferor resides." The court of appeals reversed the conviction on the grounds that proof that the person to whom the firearm is sold actually resides in a different state from the transferor is a necessary element of a conviction under § 922(a)(5). *Id.* at 551.

Green's attempt to analogize 18 U.S.C. § 922(a)(5) with 21 U.S.C. § 841(d)(2) is flawed because these two statutes are only superficially similar. The statute in *Kraase* requires knowledge of or reasonable cause to believe a "fact" (the residency of the potential firearm purchaser) that can be verified at the time of the sale of the firearm, while § 841(d)(2) requires knowledge or reasonable cause to believe that an event (the use of the piperidine in question to manufacture PCP) will occur in the future. We hold that since § 841(d)(2) prohibits the possession of piperidine knowing or having reasonable cause to believe "that the piperidine will be used to manufacture phencyclidine," proof of the actual manufacture of PCP is not a necessary element of a § 841(d)(2) violation.

### IV.

Green's next contention is that the district court erred in refusing his proposed jury instruction regarding the existence of a "buyer-seller relationship." On appeal, our review of the district court's decision is

limited to the "plain error" standard of review of Fed.R.Crim.P. 52(b).[6]

■ Green's proposed instruction No. 7 stated, "The relationship of buyer and seller, absent any prior or contemporaneous understanding beyond the sales agreement itself, does not prove a conspiracy to possess piperidine with knowledge or reasonable cause to believe that phencyclidine will be manufactured." Green claims that the trial court should have given this proffered instruction to the jury because it stated a valid theory of defense. We disagree. We are aware of no case law, nor has any been presented to us, stating that a defendant is entitled to the particular instruction he requests. In fact case law holds to the contrary—the defendant is not entitled to the particular instruction he requests as long as the instructions given adequately express his theory of defense. *United States v. Emalfarb*, 484 F.2d 787, 791 (7th Cir.1973). "The court need not give a proposed instruction if the essential points are covered by those that are given." *United States v. Xheka*, 704 F.2d 974, 987 (7th Cir.) *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). Thus, "[w]here the jury is fully and fairly instructed upon the case as a whole it is unnecessary to give any specific instruction in the precise form requested by the defendant." *United States v. Pritchard*, 458 F.2d 1036, 1040 (7th Cir.), *cert. denied*, 407 U.S. 911, 92 S.Ct. 2434, 32 L.Ed.2d 685 (1972). The record in this case reveals not only that the jury was adequately instructed regarding the various theories of defense offered at trial, but also that the court conducted a thorough instruction conference and modified the proposed instruc-tions in an attempt to satisfy all litigants, the defendant as well as the prosecutor, and gave the jury a proper, clear, and unambiguous jury charge. We hold that Green failed to meet his burden of proof of establishing that the trial court committed plain error in refusing to give the defendant's proposed instruction No. 7.

## V.

Green also challenges the district court's denial of his pre-trial and post-trial motions to dismiss for failure to comply with the 70-day time limit imposed by the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, specifically contending that the court improperly excluded the five day period from August 26 until August 31. The Act requires that Green's trial commence within 70 days of July 8, 1983, the day Green appeared before the court and entered his plea of not guilty. 18 U.S.C. § 3161(c)(1). The Act also provides, however, that certain periods of delay shall be excluded in computing the 70-day period. 18 U.S.C. § 3161(h). For example, the Act excludes: "Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—... (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; (J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court;" *id.* at § 3161(h)(1)(F) & (J); "Any period of delay resulting from the absence or unavailability of the defendant or an essential witness;" *id.* at

---

**6.** We disagree with the defendant's argument that he properly preserved his objection for appeal under Rule 30 of the Fed.R.Crim.P. "Merely submitting instructions is not sufficient to preserve the right to appeal. A defendant must object [on the record] to the judge's refusal to tender the defendant's instructions, and must clearly state the reasons for his objection [on the record]." *United States v. Brown*, 739 F.2d 1136, 1143 (7th Cir.), *cert. denied, Kenngott v. United States,* — U.S. —, 105 S.Ct. 331, 83 L.Ed.2d 268 (1984). *See United States v. Kuecker,* 740 F.2d 496, 502 (7th Cir.1984); *United*

*States v. Gratton,* 525 F.2d 1161, 1162 (7th Cir.1975). The record in this case shows that the defendant originally argued on behalf of his proposed instruction, but offered no further comment, much less an objection, (and apparently acquiesced) after the court suggested a modification of one of the Government's instructions as a substitution for the "buyer-seller" instruction. We do not interpret the defendant's statements as an objection to the judge's refusal of his instruction and we also note his failure to make an objection on the record to the court's modified instruction.

§ 3161(h)(3)(A); and "Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* at § 3161(h)(8)(A). Green agrees that the period from July 22, the date he filed pre-trial motions, and August 26, the date of the court's status hearing on the motions, is excludable as "delay resulting from any pre-trial motion, from the filing of the motion through the hearing on, or other prompt disposition of such motion." *Id.* at § 3161(h)(1)(F). Referring to the five days between August 26, 1983 and August 31, 1983 Green argues that the court rendered a final oral decision on the pending motions from the bench at the August 26 hearing and issued the August 31 written order merely as a written embodiment of those oral rulings. If the five days between August 26 and August 31 are excluded from the computation, then the trial was commenced on the sixty-eighth day as Green concedes that the court properly excluded the time period from October 26 through November 14.

■ Contrary to the defendant's contention, we find that the court's statements at the August 26 hearing did not constitute final rulings on the pending motions. The district court's minute order from the August 26 hearing recited, "Status hearing held. Ruling on pretrial motions to follow by mail. Status hearing and ruling on any pending motions continued to October 7, 1983 at 12:00 noon." Further, at the August 26 status hearing, the court stated:

"[W]hat I am going to do with respect to those two [motions] is not to read the sort of initial draft of the opinion that *we are going to write* on that because it is just going to take too much time but *we are going to deny* the motions on both theories, the motion to dismiss Counts 1 and 2 and the motion to dismiss Count 1.

On the motion for a Santiago hearing, I will indicate that orally, even though, again, *that will be part of a written order on this*—and *all of these will be effective as of the date that they are issued,* and, *in effect, I am ruling by mail* on all of these but I do want to let you know exactly what the rulings are.

\* \* \* \* \* \*

All right. That will be the orders and they will be out just as quickly as we can get them out, in the next day or two. *They will be effective as of the dates that appear."*

Initially we note the minute order reflects that the court intentionally declined to rule on any motion at the August 26 status hearing, stated that the rulings would follow by mail and that any rulings on pending motions were ordered continued to a subsequent status hearing. In addition, the dispositive portions of the court's statements are the repeated references to the issuance of orders in the future. The court referred to "the opinion we are going to write," and stated "we are going to deny the motions," "that will be a part of the written order," "I am ruling by mail," and most importantly *"all of these will be effective as of the date that they are issued"* and "They will be effective as of the dates that appear." Thus, the court's clear and unambiguous language expressed its intent that it was not officially ruling on the motions at this time. Absent any indication of willful delay or desire to circumvent the provision of the Speedy Trial Act, *see, e.g., United States v. Janik,* 723 F.2d 537 (7th Cir.1983), we see no reason to interpret the court's statements otherwise. Finally, in denying the defendant's post-trial motion to dismiss, the court reiterated its view that its August 26 "rulings" had been "tentative" and "they didn't become final because the work wasn't completed until August 31, 1983." When reviewing the totality of the circumstances, including the district court's minute order entered August 26 and the court's clear and unequivocal statements that it was not ruling on the motions until a written order was issued,

including, but not limited to, the court's statement that "all of these will be effective as of the date that they are issued," we conclude and hold that the court ruled on Green's pre-trial motions on August 31, the date the court issued the written order denying his motions. Accordingly, we affirm the district court's denial of the defendant's Speedy Trial Act motions.

## VI.

Finally, we consider Green's argument that the court erred in denying the motion for a new trial based on the alleged improper remark of a third party made in the presence of the jury, and further that the district court improperly evaluated testimony given at the post-verdict examination of the jurors in violation of Fed.R.Evid. 606(b). In reviewing the district court's denial of a motion for a new trial, our inquiry is limited to determining whether the district court's ruling entailed an abuse of discretion. *Wiedemann v. Galiano,* 722 F.2d 335, 337 n. 2 (7th Cir.1982).

Rule 606(b) provides:

"Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."

In *Wiedemann,* this court stated:

"So far as the testimony of trial jurors is concerned, the district court's inquiry into the validity of a verdict is governed by Fed.R.Evid. 606(b). The Rule was designed to protect the entirety of the jury's deliberative process, including arguments, statements, discussions, mental and emotional reactions, and votes. Fed.

R.Evid. 606 advisory committee note. The Rule does allow jurors to testify as to whether extraneous information or an outside influence reached them. However, it prohibits jurors from giving post-verdict testimony as to whether their deliberations, in fact, were prejudiced by the extraneous information or outside influence."

722 F.2d at 337; *see also United States v. Moten,* 582 F.2d 654, 665 (2nd Cir.1978) (Rule 606(b) permits jurors to testify concerning "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.") The Rule thus limits the district court's inquiry into possible jury prejudice to findings of fact at two separate levels: "First, the district court must find the basic, or subsidiary, facts—e.g., the nature, content, and extent of the extra-judicial contact. Based on its findings of subsidiary facts, the district court must then make the ultimate factual determination: whether the contact likely affected the juror's impartiality." *Owen v. Duckworth,* 727 F.2d 643, 646 (7th Cir.1984) (per curiam).

In denying the motion for a new trial, the court stated:

"[T]here was an individual *voir dire* of each of the jurors, and, as I indicated at that time, I am absolutely convinced beyond any reasonable doubt that none of the jurors at all were affected by it. Only one or—as I recall, one really, heard anything at all, and I was very impressed with his sort of matter-of-fact response that it didn't have any effect upon him whatsoever."

According to Green:

"The court applied an incorrect legal standard in ruling on the motion. The court should have assessed the impact of the statement made to the jurors by assessing the probable prejudice created when a typical juror would hear such a statement. Instead, the court erroneously relied on the foreman's testimony that

he in fact discounted the statement, which, in the court's view, avoided the 'problem.'"

Green has failed to provide this court with any caselaw support for the proposition that the court should have assessed "the probable prejudice created when a typical juror would hear such a statement." In contrast, this court stated in *Wiedemann*, "[Rule 606(b)] does allow jurors to testify as to whether extraneous information or any outside influences reached them." 722 F.2d at 337. In the present case, the court examined each and every juror to determine whether they heard the alleged "Guilty!" remark in the restaurant. The record reflects that the sole juror who recalled anything about the incident testified that he "just forgot about it immediately until" the court questioned him and reminded him about it and that "it was such a quick thing that [he didn't] really have any clear recollection of it." Neither this same juror nor the marshal observed any manifestation of surprise, interest or recognition on any of the jurors' faces following the alleged remark. Further, the jurors' testimony revealed that there was absolutely no discussion at all at any time among the jurors regarding the alleged "Guilty!" statement, but rather the testimony demonstrated that the nature and extent of the allegedly improper remark was at best so insignificant that not even the testifying juror remembered it immediately after the jury's deliberations until the trial judge jolted his memory with questions concerning the incident. Accordingly, we are in full agreement with the trial judge's ruling stating, "I am absolutely convinced beyond any reasonable doubt that none of the jurors at all were affected by [the alleged 'Guilty!' remark]," and we hold the trial court did not abuse its discretion in denying Green's motion for a new trial.

### VII.

The judgment of the district court is AFFIRMED.